WILLIAM PATTON & others *vs.* CITY OF SPRINGFIELD.

A sewer built between Garden Brook and the Connecticut River in Springfield, under the authority of the St. of 1863, c. 107, § 1, "for the purpose of protecting private property and the streets of the city from damage by water during seasons of freshet," and under § 6 "to be used, controlled, maintained and repaired in the same manner as drains constructed wholly at the expense of the city," is not necessarily restricted from uses for which the city may receive pay from persons entering it with their private drains.

A jury impannelled under the St. of 1863, c. 107, § 3, to revise a determination of the city council of Springfield, under § 2, of the division, between the city and the owners of benefited land, of the cost of building a sewer between Garden Brook and the Connecticut River under that statute, may in such revision take into consideration whether the city derives or has means to derive any revenue from the use of the sewer by persons who may pay for draining directly into it from land through which it passes, but which is not included in the district for the benefit of which it is built and on which its cost is in part assessed; and, if it is so located and built as to take and carry off sewage brought to it by other sewers or drains already built or likely to be required to drain lands situated beyond or higher upon Garden Brook, they may also take into consideration the interest of the city in such other sewers and drains.

On the revision by a jury, impanelled on the petition of persons who alleged that their land was not benefited, of a determination of the city council of Springfield under the St. of 1863, c. 107, § 2, of the extent of land benefited by the building of a sewer under that statute, and of the division of the cost of the sewer between the city and the landowners, the presiding officer refused the request of the city to instruct the jury that they " were

not to determine whether or not the amount of benefit was equal to the probable cost to the petitioners, but only whether or not the premises included were benefited." *Held*, that this refusal was erroneous, although he did instruct them that the objection that the land of the petitioners was not benefited should be sustained unless they should find that it might receive some appreciable or substantial benefit from the sewer.

After the acceptance by the superior court of the verdict of a jury impanelled under the St. of 1863, *c.* 107, to revise a determination of the city council of Springfield of the extent of land benefited by the building of a sewer under that statute, and of the division of the cost of the sewer between the city and the landowners, an appeal lies to this court on questions of law appearing from the record of their proceedings; and if, on such an appeal, it appears that the findings of the jury were upon distinct and separate issues, in reference to part of which errors of law are manifest, a new trial should be ordered of such part only, and the acceptance of the verdict affirmed as to the residue.

PETITION on the St. of 1863, *c.* 107, § 3, for a jury to revise the determination of the city council of Springfield, under § 2, of the extent of territory benefited by the construction, under § 1, of a sewer from Garden Brook to the Connecticut River in that city, and of the division of the cost of the same between the city and the owners of real estate. The sheriff of Hampden presided at the trial, and made a report thereof to the superior court, in substance as follows:

" It appeared that the city, pursuant to the statute above named, had constructed a sewer from Garden Brook in Ferry Street, through Cypress Street, to the Connecticut River, and that the city council had determined to pay one third of the expense of constructing the sewer, to wit, $4543.11, and to assess the balance, to wit, $9082.23, upon certain territory adjudged to be benefited by the sewer; and that the petitioners were each seised of lands lying in the limits of said territory. The petitioners objected that the city should pay more than one third of the expense; that their lands were not benefited; and that lands which were benefited were not included in the territory ordered to be assessed.

" The jury viewed the premises. Garden Brook flows northerly from the Boston and Albany Railroad, through the lands described. Before building the sewer, the brook had in freshets overflowed; to prevent which the city claimed to have built the ewer. It appeared that in 1849 the brook had been enlarged nd the sides walled up, (under a commission appointed upon petition for the improvement of the meadows through which

it flowed,) at the expense of owners of the lands benefited thereby; and that the brook had subsequently become obstructed, and had been at different times cleared out by order of the mayor of the city. It was admitted, however, that the brook was not a city sewer, and it was not shown that the city was under any legal obligation to keep the brook clear. At the time of the hearing, the brook was much obstructed by earth and rubbish, and by the falling in of the arch built over the brook, at different points. The sewer runs westerly from the brook. The city subsequently built another sewer, east of the brook on Ferry Street. The last named sewer enters the brook about one foot above and south of the point where part of the water of the brook falls into the Cypress Street sewer; and water flowing from the Ferry Street sewer is carried off in the Cypress Street sewer, or flows northerly in the brook.

" The city clerk testified that several parties, whose lands were in the district ordered to be assessed, had each paid the city twenty-five dollars for entering the Ferry Street sewer, to which testimony the defendant objected. The jury were instructed that, in determining the objection that the city should pay more than one third of the expense, they might consider the revenue which the city might reasonably derive from the use of the Cypress Street sewer, by parties who might pay for draining directly into it, or into any other drains connected with it, which were or might be laid pursuant to the fifteenth section of the city charter; to which the defendant excepted. It was in evidence that the city had by ordinance accepted the Gen. Sts. *c.* 49, §§ 3–6; which ordinance was put into the case.

" The case was submitted to the jury upon the following instructions, which were not objected to by the respondents :

" 1. Shall the objection that the city should pay more than one third of the expense be sustained ? If the jury find, upon all the evidence in the case, that the city should rightfully pay more than one third of the expense of the sewer, this objection should be sustained ; and, in determining the question, the jury are to consider the whole amount of land now included in the district to be assessed as properly liable to assessment, and will

not consider the pecuniary circumstances of the owners of the lands to be assessed.

" 2. Shall the objection of each petitioner that his lands are not benefited be sustained? Unless the jury find that the land of each petitioner may receive some appreciable or substantial benefit from the sewer, this objection must be sustained. The land of each petitioner should be considered separately.

" 3. Shall the objection that lands not included in the order of assessment are benefited be sustained? If the jury find that there are lands not included in the assessment which are benefited by the sewer by its protecting them from the overflowing of the brook in freshets, then this objection must be sustained."

The jury were further instructed as follows : " That the burden of proof was upon the petitioners; that the jury are not to consider whether lands owned by others than the petitioners are improperly included in the district to be assessed, the petitioners being in no manner aggrieved thereby; that in case the taking of the water by the Cypress Street sewer lowers the level of the town brook in times of freshets so as to facilitate the draining of the lands of the petitioners by private or other drains into the town brook, or into other natural watercourses in the district, then the lands would receive such benefit as would render them liable to assessment; and the prevention or substantial diminution of the liability to the overflow of water in freshets is such a benefit as would render their lands liable to an assessment, without showing any other benefit from the sewer or damage to the land.

" The respondents asked for the following instructions; which were refused, and exception was taken to the refusal :

" 1. The jury, in determining the amount which the city should pay, are not to take into consideration the possible revenue that may hereafter be received by the city for permitting parties to enter any sewer which the city may hereafter construct to connect with the Cypress Street sewer.

" 2. The jury are not to determine whether or not the amount of benefit is equal to the probable cost to the petitioners, but

only whether or not the premises included are benefited for the purposes of removing surplus water in times of freshets.

"3. The jury, in making the determinations, are not to consider whether or not the town brook, if cleared out, would take all the water that would naturally seek an outlet through it in times of freshet, but whether or not there is likely to be surplus water from the town brook which the sewer might benefit the land by taking off in times of freshet, in the present or any probable future state of the brook."

The jury returned a verdict that the city ought to pay more than one third of the expense of the sewer; that the lands of the petitioners were not benefited; and that there were no lands benefited not included in the order of the city council for the assessment of the cost of the sewer. This verdict was accepted by the superior court; and the respondents appealed.

*G. Wells,* (*N. A. Leonard* with him,) for the respondents.

*J. M. Stebbins,* for the petitioners.

WELLS, J. Upon the question of the proper division of the expense of constructing the Cypress Street sewer or drain, between the city and the owners of real estate within the territory supposed to be benefited thereby, the petitioners were allowed to show " that several parties, whose lands were in the district ordered to be assessed, had each paid the city twenty-five dollars for entering the Ferry Street sewer." The jury were also instructed that they might " consider the revenue which the city may reasonably derive from the use of the Cypress Street sewer, by parties who may pay for draining directly into it, or into other drains connected with it, which are or may be laid pursuant to the fifteenth section of the city charter." The Ferry Street sewer connects with the Cypress Street sewer by having its discharge into Garden Brook nearly opposite (about one foot above) the point where the Cypress Street sewer takes the water from the brook. The St. of 1863, *c.* 107, did not authorize the construction of drains east of the brook. The Ferry Street sewer must therefore have been constructed under the city ordinance referred to, or under the Gen. Sts. *c.* 48. We do not understand that the first of the instructions asked for and refused

raises any question different from that which is raised by the instructions given, when applied to the consideration of connecting drains. Two questions are raised by the testimony admitted and instructions given to the jury: First, whether "revenue which the city may reasonably derive from the use of the Cypress Street sewer, by parties who may pay for draining directly into it," may properly be considered by the jury; and, Second, whether such revenue from parties draining into the Ferry Street or other connecting sewers may be considered.

Upon the first question, it is the opinion of the court that if the city derived or had means to derive any revenue from the use of the drain in the manner supposed, that would be properly a matter for consideration in determining what portion of the expense of the drain should be borne by the city. We are not prepared to decide that the authority to construct a drain under the St. of 1863, *c.* 107, is so exclusive of all other, that a city might not construct a drain in part under the authority and for the purposes defined in that act, and in part under the authority and for the purposes set forth in the Gen. Sts. *c.* 48. The division of the expense and the assessments upon parties benefited would be somewhat difficult and complicated, but we cannot say that it would be impracticable, or that the combination of the two purposes and plans in one drain or one system of drainage would be improper or unauthorized. But it is not necessary to decide that question in the present case. A drain constructed under the authority of the St. of 1863, *c.* 107, is not necessarily restricted from uses for which the city might receive pay from parties availing themselves of its advantages for the purpose of entering it with their private drains. In conducting the water from the territory or district for the benefit of which it is constructed and upon which its cost is to be in part assessed, the drain may pass through land not included in such district, but whose occupants may desire to enter it with their private drains, paying a reasonable compensation for the privilege. If by any such arrangements the city had means of indemnifying itself for a portion of the cost of the drain, we think that such a source of revenue should be taken into account in determining

upon the division between the city and the owners of real estate who are to be assessed.

Upon the second question, somewhat similar considerations apply. If the Cypress Street sewer was so situated and so constructed as to answer for a trunk or main drain, to take and carry off water brought to it by other drains already constructed or likely to be required for the drainage of lands above or beyond Garden Brook, it would be reasonable that some portion of the cost of such main drain should be apportioned to the upper drains which depend upon it for their discharge. The city has an interest in such upper drains, and it may, under the Gen. Sts. *c.* 48, § 4, or by agreement, collect or receive compensation from landowners who enter it with their private drains, or are otherwise benefited; and the expense of their construction is lessened by the nearer outlet thus furnished for them. This relation of the upper to the lower or main drain, and the interest of the city in all its drains, especially in those constructed for other purposes and under other authority than the St. of 1863, *c.* 107, would warrant the jury in imposing upon the city a larger portion of the expense of the lower drain than would be imposed if the drains were not thus connected. Upon this ground and to this extent we think the testimony admitted and the instructions given in regard to the revenue from the Ferry Street sewer were proper.

The second instruction asked for and refused was clearly a proper one to have been given. The petitioners' counsel do not contend that it is not so; but suggest that it is included in the instructions that were actually given. The instruction given was, that the objection that the lands of the petitioners were not benefited should be sustained, "unless the jury find the land of each petitioner may receive some appreciable or substantial benefit from the sewer." This rule was sufficiently full, accurate and guarded in one direction. But in the other direction there might arise a doubt whether this appreciable or substantial benefit was not to be considered relatively, by comparison with the cost of the improvement. To guard against this misapplication of the instruction given it was proper that the instruction asked

for should also be given; and we think the respondents were entitled to it.

The third instruction asked for and refused may have a double aspect. The feasibility of keeping the town brook, or Garden Brook, cleared out, so as to "take all the water that would naturally seek an outlet through it in times of freshet," might have a bearing upon the division of the cost of the Cypress Street sewer between the city and the landowners who had such other means of drainage through the brook. On the other hand, it would not sustain the objection of such landowners that their lands were improperly included in the territory subject to assessment, if there was "likely to be surplus water from the town brook which the sewer might benefit the land by taking off in times of freshet." The instruction should not have been given, unless with a limitation confining it to the question whether the lands of the petitioners were properly included in the district to be assessed. With such limitation, it might properly have been given; and we think the considerations above suggested in regard to the second instruction prayed for apply to this, though perhaps in a less degree.

A question is made that the respondents have no right of appeal to this court. The statute requires the proceedings to be conducted in the same manner as in case of highways. An appeal upon questions of law appearing from the record is clearly given. Gen. Sts. *c.* 114, § 10. *Lanesborough* v. *County Commissioners,* 22 Pick. 278.

From the foregoing considerations it results that the verdict of the jury upon the first objection, namely, that the city ought to pay more than one third of the expense of the sewer, is found upon proper evidence and under proper instructions, and therefore ought to stand. The jury are not required to determine what the proportion ought to be. The statute authorizes the city council to make a new apportionment.

Upon the objection that the lands of the petitioners are not benefited, and ought not to be included in the district to be assessed, the exceptions taken by the respondents are sustained. The question then arises, whether the verdict shall be set aside,

and a new trial had of the whole case; or only as to that part in which there was error at the former trial. The issues tried, upon the several objections of the petitioners, are clearly distinct and separate, and in no manner dependent upon each other. The considerations involved and the testimony appropriate to each are unlike. There is no general verdict embracing the several findings in one result, and no final judgment of the court thereon ; but the adjudication of the court upon the findings of the jury is merely to be certified by the clerk to the county commissioners. The authority over the verdict is given to the court in broad and general terms : " The court shall receive it and adjudicate thereon, and may set it aside for good cause." Gen. Sts. *c.* 43, § 40. *Fitchburg Railroad Co.* v. *Eastern Railroad Co.* 6 Allen, 98. In exercising the power to grant new trials, the court may impose such conditions and limitations as it shall deem reasonable and right. When the questions are so clearly separate and distinct as in this case, it certainly is reasonable that the new trial should be limited to that in which alone there has been error at the previous trial. *Kent* v. *Whitney,* 9 Allen, 62. No practical difficulty can result from such an acceptance in part. Upon application for a new jury, the warrant will specify the issues which remain to be determined, and the return and acceptance of a new verdict will complete the proceedings. The provisions of this act are somewhat peculiar, and we are aware of no practice which will furnish a guide in conducting such legal proceedings as it may require. The course here adopted is analogous to that pursued in cases relating to highways, where several parties are joined in one warrant. *Anthony* v. *County Commissioners,* 14 Pick. 189. *Lanesborough* v. *County Commissioners,* 22 Pick. 278. *Worcester* v. *Leicester,* 16 Pick. 39. The new trial should be limited to the single question whether the petitioners are properly included in the district to be assessed.

As to that question, the verdict is to be set aside ; as to all other questions, its acceptance by the superior court is affirmed; and a certificate is to be transmitted accordingly.