ORRIN B. RANLETT & another *vs.* CITY OF LOWELL.

Middlesex. Jan. 9. — March 17, 1879. COLT & ENDICOTT, JJ., absent.

An ordinance of a city, forbidding any person from entering a private drain into a public sewer, without a written permit of the board of aldermen, is valid; and no action can be maintained, either by a person who, after paying the sum assessed upon him for constructing the sewer, builds a private drain connecting with it, without a permit, or by a tenant of his heirs, for an injury caused by an overflow of the sewer through the drain, even though the overflow is caused by the negligence of the city.

TORT for injury caused by the overflowing of a common sewer into the plaintiff's cellar and shop, through a drain connecting the cellar with the common sewer.

At the trial in the Superior Court, before *Aldrich*, J., it appeared that the common sewer was built under the St. of 1869, *c.* 111, in Dutton Street in Lowell in 1873, under the direction of the mayor and aldermen, the superintendent of streets having charge of the work; that at the time the sewer was built, Daniel H. Richardson was the owner of the estate on which the plaintiff's premises now are; that Richardson is dead, and the plaintiffs are tenants of his heirs; that Richardson and other abutters on the street were assessed a portion of the expenses of building the sewer, and Richardson's assessment was paid.

By the ordinances of the city of Lowell, " No person shall cut into, interfere with or obstruct a main drain or common sewer, or shall enter a private drain therein, except as herein prescribed." A subsequent section provides that " the board of aldermen may grant written permits to any persons to enter any main drain or common sewer;" "provided such persons shall first pay the assessment; and provided further that, in the materials, constructing and maintaining of such particular drain, he shall comply with the conditions that the board of aldermen may prescribe." And, by another section, a penalty is imposed for violating the above provisions.

Some time after the sewer was completed, Richardson laid a private drain from the bottom of the cellar now occupied by the plaintiffs, and entered the same into the common sewer; but there was no evidence that Richardson had any authority or permission so to do from the city or any of its officers, or from

the mayor and aldermen; nor did it appear that the existence of the private drain was known to the city or any of its officers until after the occurrence of the damage complained of in this action.

The overflow, which consisted of water and filthy and offensive sewage, occurred in August 1877. The plaintiffs offered evidence tending to show that the overflow was caused by obstructions in the sewer, which prevented a free flow and passage of water and sewage through the sewer; and that the obstructions existed through want of due care and attention on the part of the defendant, and by reason of the negligence and bad management of the defendant in taking care of the sewer.

The defendant asked the judge to rule that the plaintiffs, having failed to show that they or Richardson had any permission or authority from the defendant or any of its officers, or its mayor and aldermen, to enter the sewer with the private drain, or to maintain the same, could not recover. The judge so ruled; and ordered a verdict for the defendant. The plaintiffs alleged exceptions.

*G. Stevens*, for the plaintiffs.

*G. F. Richardson*, for the defendant.

AMES, J. The sewer in question was constructed by the city of Lowell, under its lawful authority, not only for the proper drainage of the street, but also to furnish the means or opportunity for the drainage of the adjoining houses and building lots. It was the property of the city, and the city was bound to maintain and keep it in repair. *Child* v. *Boston*, 4 Allen, 41. St. 1869, *c.* 111. The owners of the adjoining estates were assessed for the reason that those estates were benefited and made more valuable by being furnished with the means or opportunity of securing suitable drainage. But, according to the ordinance of the city, the landowner, in order to connect his own private drain with the main sewer, was required to obtain the written consent of the mayor and aldermen, to pay his assessment, and, in the materials and construction of his drain, to comply with the directions and conditions that the mayor and aldermen might prescribe. We see nothing unreasonable or contrary to the general policy of the law in any of the provisions of this ordinance. It is obvious that the obligation of the city to keep the sewer in repair might

be rendered greatly more burdensome, perhaps even impossible of fulfilment, if the adjoining landholders were allowed to construct their connecting sewers or drains, each according to his own notions of convenience and economy, both as to materials and mode of construction. It must be supposed that the purpose of the ordinance was to make it reasonably certain that such connections should be made upon some system intended for uniformity and permanence, or at least under the supervision of the proper city officers.

As this case is presented to us, there was no evidence that the former owner of the land now occupied by the plaintiffs ever obtained the written consent of the mayor and aldermen, or any consent of the city or any of its officers, to enter the sewer with his private drain, nor did it appear that the defendant or any of its officers knew of its existence. So far, therefore, from having a right in the main sewer, he was a mere trespasser, to whom the defendant owed no duty whatever. As the plaintiffs derive their title from him, they have no right of action for the cause alleged in their declaration.                    *Exceptions overruled.*