JANE LIVINGSTONE & another *vs.* CITY OF TAUNTON.

Bristol.   October 29, 1891. — January 8, 1892.

Present: ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Sewer — Entry of Private Drain — Municipal Ordinance — Consent of Mayor and Aldermen.*

A city, whose ordinances permitted the entry of private drains into its sewers "by consent of the mayor and aldermen," built a sewer partly in public streets and partly through private land; and the landowner thereupon laid a drain from his cellar into the sewer.   In an action by such owner's successor in title against the city for negligently allowing the sewer to be choked so that sewage flowed through the drain into the cellar, it appeared in evidence that an assessment laid upon such owner for a part of the cost of the sewer was abated, on the ground that it was understood at the time the sewer was built between the city and such owner that no assessment should be made upon him in consideration of his permission for the sewer to cross his land.   The records of the city did not show any consent to enter the sewer with the drain; but the plaintiff offered to prove that at the time the sewer was built the mayor told such owner that he should have the right to enter the sewer free of any cost or charge, and he would see that it was secured to him, and that the drain had been in use nineteen years.   *Held,* that the question whether or not the mayor and aldermen of the city had in fact given consent to enter the sewer with the drain was for the jury.

TORT, for negligently allowing a sewer to be choked so that sewage flowed through a connecting drain into the plaintiff's cellar.   Trial in the Superior Court, before *Sherman, J.,* who ordered a verdict for the defendant; and the plaintiffs alleged exceptions, which, so far as material to the point decided, appear in the opinion.

*R. C. Brown, (J. Smith* with him,) for the plaintiffs.

*C. A. Reed,* for the defendant.

BARKER, J.   The action is for negligently allowing a sewer to be choked so that sewage flowed through a connecting drain

into the plaintiffs' cellar. The sewer was ordered on June 15, 1870, and built between that date and December 27, 1871, partly in public streets and partly through private lands. The cellar is on land which Ellen Mason owned in 1870, and held until 1877, when it was inherited by the plaintiffs, who have since been its owners. The sewer was laid through this land by consent of Ellen Mason, passing about seven feet from her dwelling, and she connected the cellar with the sewer soon after it was built. On December 27, 1871, she was assessed as an abutter for a portion of the cost of the sewer, the assessment being payable on or before April 1, 1872. The assessment was not paid, and on April 2, 1873, a special committee on unsettled sewer assessments reported that it was understood at the time the sewer was built that no assessment should be made against Ellen Mason's estate, in consideration of her permission for the sewer to cross it, and the assessment was accordingly abated for that reason.

The ordinances of the city, besides requiring an assessment of some proportional part of the charge of making the sewer upon every person who enters his particular drain, or who by more remote means receives benefit thereby, provided that "any person may enter his particular drain into any main drain or common sewer belonging to the city, by consent of the mayor and aldermen, provided such particular drain is constructed to their approbation, and provided also that the same may be at any time enlarged or altered at the expense of the owner, whenever in the judgment of the mayor and aldermen the public convenience or health may require it. Any person so entering his particular drain without such consent, or without paying the assessment made upon him, if any, under this ordinance, or such sum as the mayor and aldermen may deem reasonable for the privilege, shall forfeit and pay the sum of twenty dollars for each offence, and such damage to the city as the mayor and aldermen deem reasonable; and said particular drain may be forthwith closed up by said mayor and aldermen."

The records of the city show that consent was granted to divers persons to enter this sewer "under the usual terms," but do not show any consent to enter the sewer with a drain from the premises of the plaintiffs.

In addition to these facts, which were either admitted or testified to by the city clerk, the plaintiffs offered to show that, at the time the land was taken and the sewer was built, the mayor told Ellen Mason that she should have the right to enter the sewer free of any cost or charge, and that he would see that it was secured for her, and that she and the plaintiffs had used the drain for nineteen years.

The plaintiffs contended that it was a question for the jury whether the entry and use of the sewer were by the consent of the mayor and aldermen; but the court ordered a verdict for the defendant, and the plaintiffs excepted.

It is not contended that the facts that the sewer was laid in the land of Ellen Mason, and that the particular drain connecting the cellar with it was wholly upon her land, gave her or the plaintiffs any right to use the sewer. It is plain that neither the making of the assessment nor its abatement for the reason stated would give the right to make a connection with the sewer, without the consent of the mayor and aldermen. Even the payment of the assessment would not have given such a right. Upon this point the case is governed by the case of *Ranlett* v. *Lowell*, 126 Mass. 431.

But it is to be noticed that the ordinance here did not require a written consent of the mayor and aldermen; and even if a written consent had been required by the ordinance, that requirement might have been waived by the city. *Sheridan* v. *Salem*, 148 Mass. 196. The offer of proof justified the plaintiffs in claiming the same ruling to which they would have been entitled if the facts offered to be proved had been admitted. The question then is, whether, if it is true that when the land was taken and the sewer was built, the mayor, as a part of the arrangement under which it was built through Ellen Mason's land without an assessment upon her in consideration of her permission to lay the sewer across it, had told her that she should have the right to enter the sewer free of any cost or charge, and that he would see that it was secured for her, coupled with the facts that she connected her drain with the sewer shortly after it was built, and that she and the plaintiffs had used it for nineteen years, it could be properly found that the consent of the mayor and aldermen had in fact been given.

The facts admitted and testified to show that both Ellen Mason and the city did several of the things which the plaintiffs' offer of proof stated to have been a part of the bargain by which, in consideration of her permission to lay the sewer through her land free of any claim for damages, the permission of the mayor and aldermen was to be procured for her to enter the drain into the sewer. Those facts have some tendency to prove the agreement stated in the offer, and are consistent with the inference that it was performed on the part of the city as well as by Ellen Mason. If the mayor promised as part of such an agreement to see that the consent was secured for her, we think a jury might fairly infer from that promise, and from the facts that Ellen Mason made no effort to recover damages and did immediately make a connection with the sewer, that the mayor performed his promise, and obtained the consent of the mayor and aldermen.

Upon the whole, we think that the case should have been submitted to the jury.                                *Exceptions sustained.*