### OTTO BREUCK vs. CITY OF HOLYOKE.

Hampden.    September 23, 1896. — January 7, 1897.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*City — Injury to Property by Water from Sewer — Action — Contributory Wrong — Waiver.*

The fact that a city on several occasions pumped water out of a person's cellar which had overflowed from a sewer will not justify a finding, in an action against the city for damages caused by such overflow, that a breach by him of the ordinances relating to sewers, in connecting his premises with the sewer, had been waived by the city.

A city is not liable to an action for injury occasioned to the plaintiff's property by the overflow of water from a sewer, if the evidence tends to show no damage which was not caused in part by the connection of his premises with the sewer, made and maintained by him contrary to the city ordinances.

TORT, for injury occasioned to the plaintiff's property by the alleged negligence of the defendant city in the repair and construction of a sewer. Trial in the Superior Court, before *Maynard*, J., who directed the jury to return a verdict for the defendant; and reported the case for the determination of this court. The facts appear in the opinion.

*A. L. Green*, for the plaintiff.

*A. B. Chapin*, for the defendant.

BARKER, J. The writ is dated August 3, 1895, and the trial was in March, 1896.

The declaration had three counts. The first alleged that the defendant negligently failed to keep a sewer in repair whereby the plaintiff, who was in the exercise of due care, suffered injury to his property; the second, that the sewer was negligently suffered by the defendant to be out of repair, whereby the plaintiff's real estate was damaged, he being in the exercise of due care; and the third, that the defendant ought to have built the sewer upon such a plan and in such a manner as were suitable to carry off the sewage, but negligently failed to do so, and instead built the sewer of insufficient capacity and of such a plan and in such a manner as to be insufficient to carry off the sewage, which forced the sewage back into the plaintiff's buildings, whereby they were undermined and injured, he being in the exercise of due care. The defendant's answer was a general denial.

The case was tried before a jury in the Superior Court and after verdict was reported by the presiding justice for the determination of this court. The report, after reciting a few facts as to which we assume there was no dispute, states that the jury took a view, and that material evidence was introduced by both parties, and then recites the testimony of five witnesses called by the plaintiff, and of three called by the defendant, as all that is material to the issue. The report then states that, after this evidence was in, the defendant asked the court to rule that the plaintiff could not recover, and further offered in evidence certain city ordinances for the purpose of showing that the plaintiff was not legally connected with the sewer, and for any other purpose for which they might be competent. The plaintiff objected to the admission of this line of defence because it was not specifically set out in the answer. The presiding justice excluded evidence of the ordinances, and required the jury to find whether a want of due care on the part of the plaintiff contributed to the overflow into his cellars, and whether the want of due care by the defendant in the construction or maintenance of its sewer was the sole cause of the overflow, and the amount of damage, if any, which the plaintiff suffered in his property as the direct result of the overflow. The jury then found that the plaintiff's injury came in no wise from his neglect, but did result from the negligence of the defendant, and that the plaintiff's damages were

seven hundred dollars. After these special findings the court admitted in evidence the city ordinances, and directed a verdict for the defendant, to which the plaintiff excepted, with the agreement that the case should be reported to this court, and that, if under all the evidence the plaintiff was entitled to have his case submitted to the jury, the verdict should be for him for seven hundred dollars, and that otherwise the verdict for the defendant should stand.

The question for our decision is therefore whether there is any view of the whole evidence upon which the plaintiff was entitled to have the case submitted to the jury. Upon an examination of the reported evidence, we are of opinion that the plaintiff was not entitled to have the case submitted to the jury.

Upon his land at the corner of Jackson and Summer Streets the plaintiff had built two brick tenement houses. The one upon the corner of the lot upon the two streets was built in the year 1881, and the other on Jackson Street and in the rear of the first was built in 1887. Running from Jackson Street behind the rear block was an alleyway. In the front block, besides apartments for dwellings, there was also a shop. In Jackson Street was a city sewer, built between the years 1876 and 1880, designed to collect and transmit to the river both ordinary sewage and the surface water, the sewage being admitted by house connections, and the surface water by catch-basins placed in the streets. As originally built, this sewer descended Jackson Street past the plaintiff's blocks, crossed Summer Street following Jackson Street to Canal Street, and, turning to the left at the corner of Jackson and Canal Streets, was continued down Canal Street past the foot of Adams Street and of Sargent Street, which were streets parallel with Jackson Street, to a point in Canal Street opposite the overflow of the Holyoke Water Power Company's third-level canal, where the sewer turned to the right and was led into the river under the overflow. In Canal Street there was a well-hole in the sewer between Jackson and Adams Streets. In Jackson Street and in Canal Street to the well-hole this sewer was of brick, twenty-six inches high and about twenty inches wide. From the well-hole to its lower end at the river it was of iron, five feet in diameter, and this part of the sewer served as the discharge of another sewer in Adams Street. In

July, 1888, a tubular iron conduit was put in at the well-hole in Canal Street, leading under the bottom of the third-level canal, which runs next to and parallel with Canal Street, and at right angles to the course of the canal, and a sewer leading directly to the river was built from the lower end of the conduit. In that year the Jackson Street sewer was cut off from its original outlet and made to discharge into the conduit built under the canal. In June, 1893, this conduit caved in or collapsed, and became obstructed by sand, which came into it from the adjacent soil through openings in the tube thus caused, and it remained thus obstructed until it was replaced by another iron tube in July, 1895. During the work of replacement, which lasted for ten or twelve days, the Jackson Street sewer was cut off from that outlet, and was inadequately discharged through its old outlet. The Holyoke Water Power Company empties its canals yearly during the first week in July, to allow work to be done in and about them, and keeps the canals filled during the rest of the time, except sometimes on Sundays for a day. The conduit which collapsed in June, 1893, was put in when the water was out of the canal in July, 1888, and the work of replacing it was done when the water was out in July, 1895, when the water power company extended for a week or ten days the period during which the water was out of the canal. The evidence tended to show that the cause of the collapse of the conduit in 1893 was that there was not time properly to rivet it when it was put in, before the water was let into the canal.

Both of the plaintiff's blocks had house connections with the Jackson Street sewer, and the plaintiff testified that both blocks had always been connected with that sewer. Besides the making of these original connections with the sewer when the blocks were built, the plaintiff testified that he put a pipe from the shop in the front block into the sewer in October, 1891, and that he made changes in the plumbing of the rear block by taking a sink and a bathtub out from the cellar of the rear block which had been laid out for a washroom, he testifying that he took out the sink and bathtub "two or three years ago," and again that he took out the sink "about four or five years ago," so that it appeared that he made changes in the drainage system of the blocks from 1891 to 1894.

Looking at the evidence with respect to the effect of the city ordinances upon the plaintiff's rights, the case is in a peculiarly unsatisfactory situation.

We find no direct testimony that any person other than the superintendent of streets dug up the street, or opened the sewer to connect the plaintiff's blocks with it, and none that his particular drains which entered the sewer, or the plumbing upon his own premises, was not of the required materials or grade. Nor was there any direct testimony to the effect that the particular drains were put in by the superintendent of streets, or under the direction of the mayor and aldermen, or that the plumbing of the blocks conformed to the requirements of the ordinances as to materials, grade, and other particulars. Two of the ordinances were in force from October 27, 1875, and three from June 30, 1885. None of them required, in terms, an application to the city authorities on the part of a person intending to connect his premises with a sewer, but the last ordinance of June 30, 1885, requires that, before proceeding to construct any portion of the drainage system of a building, or to make any changes in the existing drainage system, the owner shall file with the city engineer a plan showing the whole drainage system from its connection with the sewer to its terminus in the house, together with the location and size of all branches, traps, ventilating pipes, and fixtures, which plan must be in accordance with the ordinances, and indorsed with the word "Approved," signed by the city engineer, and kept on file in his office. The city engineer, who had held that office for one year, testified: "I looked for an application by Mr. Breuck for the entry of the pipe into the sewer in the city, and could not find it. If there had been one, I think I should have been likely to find it. There is usually a record. I found no record of it." We have now referred to all the testimony bearing upon the question whether the plaintiff had been guilty of a breach of any of the ordinances, save that the city engineer testified that he had visited the front house, and had seen where one sewer entered, — the one in the front house, — and that it seemed to him that the sewer was built before the house was; and the plaintiff testified that the only sewer pipe of the rear house was the same with that of the front house, the pipe going through both houses.

If upon this testimony the jury had found that there had been no breach of the ordinances by the plaintiff, we should be slow to disturb the finding.  But bearing in mind the terms of the report, we feel compelled to assume that the plaintiff had connected the rear house with the sewer when he built that house, in 1887, without filing with the city engineer the plan required by the last ordinance of June 30, 1885, that from 1891 to 1894 he made changes in the drainage systems of both blocks without filing such a plan, and that he himself made a new and direct connection between the shop in the front block and the sewer in October, 1891, causing the sewer to be opened for that purpose by persons other than the superintendent of sewers or his employees, and causing the particular drain which entered the sewer to be laid, not under the direction of the mayor and aldermen, nor of a size, material, or grade which they had directed, so that the plaintiff's houses were both connected with the sewer in violation of the provisions of the two ordinances of October 27, 1875, and of the last ordinance of June 30, 1885.

It is contended by the plaintiff that the jury might find that any infractions by him of these ordinances were waived by the city authorities.  We find, however, no evidence from which such a waiver can fairly be inferred.  The ordinances do not require a consent on the part of the city authorities, as was required by the ordinances considered in *Livingstone* v. *Taunton,* 155 Mass. 363, in *Sheridan* v. *Salem,* 148 Mass. 196, and in *Ranlett* v. *Lowell,* 126 Mass. 431.  The ordinances in the present case prescribed by whom and how the work should be done, and made the act of the owner in filing a plan a condition precedent.  In *Sheridan* v. *Salem* there was evidence that the permission which the ordinance required to be in writing was given orally, and was reported to the mayor and aldermen.

In the present case we note, in addition to the fact that the houses were connected with the sewer from the time when they were erected, no evidence from which it is contended that a waiver can be inferred, except the testimony that on several occasions the city pumped the water out of the plaintiff's cellars.  Such assistance is granted to persons where cellars may have been flooded for any cause, and would not justify a finding that the plaintiff's breaches of the sewer ordinances were waived by the city.

These infractions of the ordinances would be conclusive against the plaintiff's right to recover, if the flooding of his premises was caused by the connections with the sewer. See *Ranlett v. Lowell*, 126 Mass. 431. But the plaintiff contends that the evidence would justify a finding that the flooding of his premises with sewer water, and the undermining and settling of his blocks, were caused by water which came from the sewer, not through his particular drains, nor in consequence of the connections between the blocks and the sewer, but which by the faulty condition of the sewer was forced back into and upon the soil of his land, and came into his cellars and injured his buildings by percolating from the sewer into and upon his land, or running there from the catch-basins.

There was testimony that there was, especially during rains, great back pressure upon the water in the sewer, so that it would back up in pipes in the house as high as fourteen feet above the cellar, and would spout up three or four feet from the catch-basin on Jackson Street, and that there was a place where it came from the sewer through the back alley, and that it used to spout out of the manhole like a fountain, and other testimony, from all of which the jury might find that water was forced from the sewer on to the plaintiff's premises in other ways than through the sewer connections with the blocks.

But the plaintiff's own testimony, and that of other witnesses whom he called, and who had occupied tenements in his blocks, was that water also came from the sewer upon his premises through the pipes connecting them with the sewer. The only damages which the evidence tended to show were due to the mechanical effect of the water in causing the buildings to crack and settle. The damage so caused by water which found its way to the premises through or in consequence of the house connections with the sewer cannot be separated or distinguished from the damage caused by water thrown from the catch-basins or manholes, or forced through the walls of the sewer and the soil of the street upon the plaintiff's premises. The evidence, therefore, tended to show no damage which was not caused in part by the connections with the sewer made and maintained by the plaintiff contrary to the city ordinances; and this brings the case within the ordinary rule, that a plaintiff cannot recover

damages which are in part caused by his own negligence or wrong.

It is not an answer to say that the jury found specially that the want of due care by the defendant in the construction or maintenance of the sewer was the .sole cause of the overflow,. for the reason that the city ordinances were not before the jury. The greatest possible effect which, under the circumstances, can be given to the special findings, is that the overflow was due to faulty construction or maintenance of the sewer, and was not at all caused by any faulty construction of the plaintiff's connections with the sewer.   The findings are not inconsistent with the defendant's contention that the connections themselves were made in contravention of the ordinances; and because upon the evidence all the damage which it tended to show was due in part to water which came into the premises through those connections, the plaintiff was not entitled to have the case submitted to the jury.                    *Verdict for the defendant to stand.*