CHARLES J. O'MALLEY & others[1] *vs.* COMMISSIONER OF PUBLIC WORKS OF BOSTON & another.[2]

Suffolk.    December 11, 1959. — March 11, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Deed,* Construction, Reservation, Easement, Tax title property. *Easement.* *Municipal Corporations,* Tax title property, Work or services furnished by municipality, By-laws and ordinances, Sewer, Betterment. *Permit.* *Sewer.* *Taxation,* Betterment, Sewer assessment. *Boston.*

Following acquisition by a city of a tax title to land, a later duly recorded taking by eminent domain of a sewer easement in the land by the city, and a still later foreclosure of the city's tax title, a deed by the city conveying "all . . . [its] interest . . . [in the land] acquired under . . . [the] tax title and the foreclosure" implied a reservation of the sewer easement by the city and left the land in the hands of the grantee subject thereto. [546]

Mere permission to connect land with a sewer of the city of Boston and inspection of the work of connection by a city inspector who did none of it did not constitute "services" or "work" within St. 1949, c. 222, allowing the city to fix charges "for any services rendered or work performed by the city." [548]

St. 1897, c. 426, § 7A, inserted by St. 1945, c. 511, § 2, does not authorize the city of Boston to require either a permit or a fee, as distinguished from a betterment assessment, for a permit to connect land with an existing sewer. [549]

The fee for a permit to connect land with a sewer in Boston imposed by c. 40A, § 1, cl. 260, inserted in 1956 in the Revised Ordinances of Bos-

---

[1] Austin F. O'Toole, cotenant in common of the locus, and James M. Salah, holder of a first mortgage of the locus.

[2] The city of Boston.

ton (1947), is not justified by the provision of St. 1949, c. 222, § 1, allowing the city by ordinance to fix the fees for permits "granted under the authority of statutes" since no statute authorizes the requirement of such permit or a fee therefor. [549]

Neither a provision of an order of taking of a sewer easement in vacant land in Boston, that no betterments were to be assessed, nor eventual abatement in full of a betterment assessment made pursuant to provision therefor in another order of taking of a sewer easement in the land, was shown by the record to bar a subsequent assessment on the land under St. 1897, c. 426, § 7A, inserted by St. 1945, c. 511, § 2, upon connection of the land with either sewer. [550–551]

BILL IN EQUITY, filed in the Superior Court on March 30, 1959.

The suit was heard by *Tomasello,* J.

*William H. Kerr,* for the defendants.

*James M. McDonough,* for the plaintiffs.

CUTTER, J. The plaintiffs seek declaratory relief concerning their right as tenants in common of land (the locus) in Boston (the city) to determine (a) whether the defendant commissioner (the commissioner) may lawfully exact any fee for permitting connections with certain sewers maintained by the city; (b) the validity, applicability, and construction of certain city ordinances; (c) whether the city has a sewer easement in the locus; and (d) the effect upon the imposition of certain fees of two orders of taking by the board of street commissioners of Boston. The commissioner, the city and each plaintiff have appealed from the final decree, described more fully later in this opinion. The evidence is reported.

On February 16, 1934, the city acquired a tax title to the locus. By an order of the city's board of street commissioners, adopted January 15, 1941, the city took an easement eight feet wide (the eight foot sewer easement) to lay and maintain a sewer through the locus. The order provided that "[n]o betterments are to be assessed for the making of the . . . improvement." By an order of taking, adopted March 20, 1941, the city took an easement to lay and maintain sewerage works in part of Gould Street, a private way, in part at least on the locus. The order stated that betterments were to be assessed for this improvement. An assessment of $434.60 was made with respect to the locus on

February 15, 1950, but it was abated in full on January 18, 1952.

At some time in 1941 or 1942, but in any event subsequent to March 28, 1941, when the second taking was recorded, all rights to redeem from the tax title were foreclosed.

By deed dated March 23, 1954, the city granted to Salah "all the . . . interest of the city . . . [in the locus] acquired under . . . [the] tax title and the foreclosure." By a deed dated April 16, 1957, Salah granted that interest in the locus to O'Malley and O'Toole as tenants in common. O'Malley is now engaged in constructing houses on various lots within the locus. Some houses have been completed. Others are under construction. The city has constructed a sewer in Gould Street and in the eight foot sewer easement.

Upon the completion of certain of the houses, drains from them were connected to the sewer on Gould Street. Connection permits were issued by the commissioner. Thereafter, someone in the commissioner's office told O'Malley that he would be required to pay an "entrance fee" for the sewer connections already made and that permits for future sewer connections from other lots would not issue until an entrance fee was paid for each lot.

The foregoing facts, as well as certain city ordinances, mentioned below, were admitted by the pleadings. In addition it appears from the evidence that the sewers are about sixteen feet below the surface; that connections to sewers are made by the landowners subject only to inspection by the city of "the finished product"; that the city inspector does no work relating to the connection; and that further connections with these sewers are contemplated by O'Malley.

The final decree declared that (1) the "commissioner . . . has no right to exact any . . . fee for the connection of the drains of the . . . houses to the sewers"; (2) the city ordinances relied upon to support the charging of a fee are inapplicable to any assessment or charge for such connections; (3) the city has a sewer easement in the locus; (4) the order of January 15, 1941, providing that no betterments were to be assessed for the construction of the sewer, prohibits im-

O'Malley *v.* Commissioner of Public Works of Boston.

posing an entrance fee for connections with the sewer in the eight foot sewer easement; and (5) the abatement of the assessment made with regard to the Gould Street sewer prohibits imposing an entrance fee for connections with that sewer.

1. The plaintiffs contend that the city's sewer easements in the locus were merged in the fee, when the city acquired title to the locus by the foreclosure of the tax title. The taking of the sewer easements after the creation of the tax title, but before the foreclosure, had the effect of cutting down the city's security interest afforded by the tax title. See *Collector of Taxes of Boston* v. *Revere Bldg. Inc.* 276 Mass. 576, 579. See also G. L. c. 79, § 44A (as amended through St. 1936, c. 137); Nichols, Taxation in Massachusetts (3d ed.) pp. 382, 389, 749–750; Annotation, 45 A. L. R. 2d 522. After the taking, until foreclosure of the tax title, the city held its tax title security interest subject to the sewer easements. Thus the questions for consideration on this branch of the case are (a) whether, after the foreclosure of the tax title, the city's sewer easement was merged (see *York Realty, Inc.* v. *Williams,* 315 Mass. 287, 289–290; Restatement: Property, § 450) in the fee acquired by the foreclosure, and (b) whether the conveyance to Salah, without, so far as appears in the record, any express reservation of the city's sewer easement, operated to give Salah a fee title free of the sewer easements.

To effect the extinguishment of an easement by merger arising from the acquisition of the fee in a servient property, "there must be a union of the greater and lesser estate in the same person and in the same right." See *Hurley* v. *A'Hearn,* 338 Mass. 695, 697; Restatement: Property, §§ 497–499; Am. Law of Property, §§ 8.88–8.93; Swaim, Crocker's Notes on Common Forms (7th ed.) § 231. See also *Krinsky* v. *Hoffman,* 326 Mass. 683, 687. The city's acquisition and foreclosure of the tax title were only to collect unpaid taxes and not otherwise for any public purpose. See St. 1943, c. 434 (creating in Boston a board of real estate

commissioners to manage property acquired by foreclosing tax titles and prescribing methods for sales and conveyances of such property). The sewer easements were acquired for a public purpose. A method of disposing of such property acquired by eminent domain, different from that under St. 1943, c. 434, governing sales of tax title property, was prescribed by G. L. c. 40, § 15 (but see St. 1957, c. 147), in 1954 when the city sold to Salah. There is thus substantial basis for the contention that, because of these statutory provisions, there was not sufficiently a holding by the city "in the same right" to effect a merger. We, however, need not decide whether this is so, or whether an easement in the public right (still required for public use) originally acquired by eminent domain can be lost (see *Brookline* v. *Whidden*, 229 Mass. 485, 492–493) by a conveyance by the city of the fee in the property, originally the servient estate, without express reservation of the easement. See Am. Law of Property, § 9.55. Here the city purported to sell to Salah only its interest "acquired under . . . [the] tax title and the foreclosure." The sewer easements were acquired not by the foreclosure but by eminent domain before the foreclosure. The deed to Salah must be interpreted in the light of the "presumed intention of the parties . . . gathered from the language" of the deed, the "physical condition of the premises," and the "knowledge which the parties had or with which they are chargeable." See *Krinsky* v. *Hoffman*, 326 Mass. 683, 687–688. Cf. *Joyce* v. *Devaney*, 322 Mass. 544, 548–550. Even if the sewer was sixteen feet under ground (cf. *Dale* v. *Bedal*, 305 Mass. 102, 104), the sewer takings were of record. In the circumstances there is ample basis for implying a reservation by the city of these duly recorded sewer easements, for the parties cannot reasonably have intended the discontinuance of the public sewer use, even if the board of real estate commissioners had authority to make a conveyance free of that use. The trial judge correctly concluded that the city has sewer easements in the locus.

2. Revised Ordinances of Boston (1947) c. 27, § 10 (as

amended by Ord. 1954, c. 4, § 1), provides that the commissioner may issue a permit "to competent mechanics for the purpose of entering particular drains into public . . . sewers, on condition . . . that the person applying for the permit shall make connection of such drain with such sewer only in the manner shown on the back of the permit, and only in the presence of an inspector of the sewer division . . . [and] shall not cover up any work until inspected . . . . The commissioner . . . before issuing the permit for entering the drain into a particular public sewer from land upon which a sewer assessment has not been paid, shall be paid for the city an assessment of three cents per square foot for all land in the estate from which the entry is made within one hundred feet of the street or strip of land in which the sewer or particular drain is laid." Revised Ordinances (1947) c. 40A, § 1 (inserted by Ord. 1956, c. 7, § 2), provides in (260) that the fees fixed under St. 1949, c. 222, for a sewer permit under Rev. Ord. (1947) c. 27, § 10, "to enter a particular drain into a public sewer shall be three cents for each square foot of land lying within one hundred feet of the street or strip of land in which the public sewer is laid and constituting part of the estate from which the entry is made; provided, that such a permit shall be issued without fee if a betterment assessment levied upon such estate for the construction of the public sewer has been paid."

The city, to impose the fees or charges here in issue, relies on Rev. Ord. (1947) c. 40A, § 1 (260), concerning permit fees and not on the assessment provisions of c. 27, § 10, quoted above. For its statutory authority to establish c. 40A, § 1 (260), and to impose a permit fee, the city refers to St. 1949, c. 222,[3] § 1, providing that the city "may from time to time, by ordinance, fix the fees for all . . . permits *granted under the authority of statutes* where the entire proceeds of the fee form part of the income of the city" (emphasis supplied)

---

[3] Section 3 of c. 222 provides in part, "A fee or charge fixed by ordinance under this act shall be deemed to apply notwithstanding any general or special law heretofore passed fixing a different fee or charge or imposing any limitation on the amount thereof or designating a particular board or officer to fix said amount . . . ."

with exceptions not here relevant, "and may likewise fix the charges to be paid for any services rendered or work performed by the city or any department thereof . . . unless such service is rendered . . . as part of the general services furnished for the benefit of the citizens of the city as a whole."

. The record shows no services rendered or work performed by or in behalf of the city, except (a) permitting the connection to the sewer, if that be work or services, and (b) the presence of the inspector, who, according to the testimony, did none of the work involved in making the connection. This inspection, in part at least, is for the general public benefit for the protection of the public health and the public property interest in the sewer. We hold that the slight action of the inspector does not constitute "services" or "work" within c. 222, § 1.

The provisions of c. 222, § 1, have been construed in *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston,* 338 Mass. 199, 203–204, in which § 1 was held to permit the city to fix by ordinance a fee for a license clearly authorized under particular statutes. It thus must be determined whether any statute authorizes the granting of the permits here given.

There has been a long history of statutory authority for sewer construction and maintenance in Boston. See *Sullivan* v. *Mandell,* 212 Mass. 174, 175–177; Nichols, Taxation in Massachusetts (3d ed.) pp. 815–818. The present statutory scheme was enacted by St. 1897, c. 426, in which by § 2 the board of street commissioners, with the approval of the mayor, was given broad powers over sewers. Section 1 of this 1897 statute provided that no "sewerage work" thereafter should "be constructed in . . . [the] city, except under authority of this act." Following the decision in *Sears* v. *Street Commrs. of Boston,* 173 Mass. 350, 352–356, the special statutes relating to Boston sewers were again amended and, for St. 1897, c. 426, § 7, there was substituted by St. 1899, c. 450, § 3, a new section governing assessments for sewer betterments and also permitting the board of street commissioners to "assess upon any estate heretofore or hereafter connected with a public sewer a reasonable part of the

cost of construction thereof: provided, that no owner of the estate has paid for such sewer or has paid any assessment for its construction." This provision is now embodied in St. 1897, c. 426, § 7A, inserted by St. 1945, c. 511, § 2. We construe the charge so authorized as an assessment to be made under the general taxing power to levy betterments proportionally, for traditionally payments for sewer betterments have been assessed in Massachusetts as an exercise of the taxing power and not the police power. See *White* v. *Gove*, 183 Mass. 333, 339. See also *Union St. Ry.* v. *Mayor of New Bedford*, 253 Mass. 304, 309–312; Nichols, Taxation in Massachusetts (3d ed.) pp. 813–820.

We conclude that nothing in St. 1897, c. 426, §§ 7, 7A (as in force at all relevant times, see St. 1899, c. 450, § 3; St. 1912, c. 371, § 1; St. 1945, c. 511, § 2), constitutes statutory authority to the city to require either a permit or a fee, as opposed to a betterment assessment, for a permit to connect with an existing sewer. See *Hall* v. *Street Commrs. of Boston*, 177 Mass. 434, 438–439. It would take clear language to lead us to find that the Legislature, in addition to the betterment assessment, intended to authorize also, or alternatively, the imposition of any permit fee constituting more than a modest inspection fee to pay for the inspector's time. The street commissioners have not made any assessment, on which reliance is now placed, under St. 1897, c. 426, § 7 or § 7A. If it be suggested that the general provisions of G. L. c. 83, § 20 (see *Cohen* v. *Price*, 273 Mass. 303, 307), prevail in Boston rather than the specific and comprehensive provisions of the 1897 statute, as amended, the suggestion is without merit. See *Clancy* v. *Wallace*, 288 Mass. 557, 564; *Walsh* v. *Commissioners of Civil Serv.* 300 Mass. 244, 245. See also *Malden* v. *Flynn*, 318 Mass. 276, 278. Since no statute appears specifically to authorize Boston to require a permit or a permit fee for a sewer connection, St. 1949, c. 222, § 1, is not applicable and affords no basis for the adoption of Rev. Ord. (1947) c. 40A, § 1 (260).

Some suggestion is made in the city's brief that the city as

proprietor can prescribe by ordinance a permit and a fee as a condition of connecting a drain with one of its sewers. See *Patton* v. *Springfield,* 99 Mass. 627, 633; *Ranlett* v. *Lowell,* 126 Mass. 431, 432; *Livingstone* v. *Taunton,* 155 Mass. 363, 365; *Breuck* v. *Holyoke,* 167 Mass. 258, 263. We need not decide whether power as proprietor exists to adopt such an ordinance (see G. L. c. 40, §§ 1, 21 [5], [6]; St. 1854, c. 448, § 35; St. 1909, c. 486, §§ 1, 2, 4) for Boston has not done so. Revised Ordinances (1947) c. 40A (inserted by Ord. 1956, c. 7, § 2) provides in the opening part of § 1 that "[f]ees and charges are hereby fixed under" St. 1949, c. 222. Clause (260) thus was not adopted as an exercise of any inherent or general power of the city as proprietor.

3. It remains for us to consider whether the provisions of the 1941 takings and the abatement in 1952 of the street commissioners' 1950 assessment of $434.60 in connection with the Gould Street sewer forever bar any assessment under St. 1897, c. 426, as amended to include § 7A, when any drain from the locus is connected with either sewer. The record does not clearly show when the Gould Street sewer and the sewer in the eight foot sewer easement were constructed. The locus, however, appears to have been vacant at least until after Salah purchased in 1954, and, as the assessment for the Gould Street sewer was made in 1950, it is likely that both sewers were in place while the locus was vacant. Nothing in the record shows that the failure to assess betterments with respect to the taking of January 15, 1941, was not because there was then expected no use of the sewer by the owners of the locus which would cause any betterment to it. Similarly nothing in the record shows that the abatement of the assessment of February 15, 1950, relating to the Gould Street sewer, was not caused either by the absence of any reasonably to be expected benefit to the locus or by the circumstance that the city then owned the locus. See *Worcester County* v. *Mayor & Aldermen of Worcester,* 116 Mass. 193, 194–195. See also G. L. c. 60, § 77 (as amended by St. 1938, c. 339, § 3; see also St. 1953, c. 654, § 37). These circumstances may have concluded the city's

right to make any assessment for betterments by reason of the original improvement (see the portion of § 7 of the 1897 statute now found in § 7 as amended by St. 1945, c. 511, § 1) but they have not been shown to be such as to foreclose action by the city under § 7A (St. 1945, c. 511, § 2) upon a later connection of the locus to one or both of the sewers, for the locus has not yet been burdened with any betterment assessment on account of the sewers. There is no showing of any contract not to make an assessment. Cf. *Hendrie* v. *Boston,* 179 Mass. 59, 60; *Bartlett* v. *Boston,* 182 Mass. 460, 463; *Kirchner* v. *Pittsfield,* 312 Mass. 342, 344–345. The record does not justify the provisions of the final decree stating the effect of the orders adopted January 15, 1941, and March 20, 1941, and of the abatement of the assessment under the latter order.

4. The final decree is to be modified by striking out paragraphs 4 and 5, and by substituting therefor a new paragraph 4 declaring that the plaintiffs have not established facts showing that the order of the street commissioners of January 15, 1941, or their order of March 20, 1941, or the abatement of the assessment made as a consequence of the latter order, prohibits the street commissioners or the city from making any assessment, which still may seasonably be made, and which is authorized by St. 1897, c. 426, § 7A, as amended, with respect to the connection of drains of the dwelling houses described in the bill to the sewers therein described. As so modified, the final decree is affirmed.

*So ordered.*