COUNTY COMMISSIONERS OF HAMPSHIRE, petitioners.

Hampshire.    Sept. 22, 1886. — Jan. 11, 1887.    DEVENS & W. ALLEN, JJ., absent.

The St. of 1875, c. 200, provided that the county commissioners of Hampshire should make certain public improvements on the banks of a river, and directed "the expenses and charges" to be paid out of the treasury of the county; that upon the completion of the work they should make a record, in detail of their doings, and of the amount of "actual expenditure" incurred; that the amount of "such expenditures" should be borne by the county, and by such towns, persons, and corporations, and in such proportions, as commissioners to be appointed by this court, upon petition by the county commissioners, should determine; that the commissioners so appointed should determine and decree

what towns, persons, and corporations, including the county, were benefited, and what proportion of the "cost of said work" should be paid by them severally; and that any person affected by the decree, and dissatisfied with the determination of the commissioners might appeal to a jury. The county commissioners made the improvements, the last expense for the same being incurred prior to September 1, 1876. On August 4, 1884, they made a record, in which they charged as their expenditure a sum composed of this amount with compound interest to date. On August 5, 1884, they filed a petition for the appointment of commissioners. Such commissioners were appointed, and they made a decree, from which several appeals were taken. *Held,* that the appeal of one of the parties did not open for the consideration of the jury the question of what parties were benefited, and the amount to be assessed to each, but only the questions whether it was benefited, and whether the amount assessed to it was too great. *Held, also,* that laches which would prevent an assessment against the parties benefited was not imputable to the county by reason of delay on the part of the county commissioners in filing their petition for the appointment of commissioners. *Held, also,* that simple interest only upon the sums expended by the county commissioners could be included as part of the expenditure to be assessed. *Held, also,* that the record of the county commissioners was conclusive only as to the amount and propriety of the expenditures; and could be revised upon the question of what interest should be allowed.

In 1876 the property of a railroad company was benefited by a public improvement, made under authority of the St. of 1875, c. 200, which rendered any corporation benefited by the improvement liable to pay its proportion of the cost. In 1880 the company mortgaged its property to secure certain bonds; and in 1884 the mortgage was foreclosed, and the property was bought by A., as trustee of the bondholders, he being authorized so to do by the St. of 1883, c. 64, which also provided, that, immediately after the sale, a new corporation should be organized, which should be subject to all the debts, duties, and liabilities of the former company. The St. of 1875 directed that a certain commission should determine what persons and corporations were benefited by the improvement, with a right of appeal to a jury. The commission determined that A., "the owner in fee of the property mentioned in the St. of 1883, c. 64," was benefited, and should pay a certain proportion of the cost of the work. On appeal to a jury, a verdict was returned that the real property formerly of the railroad company and now held by A. should pay a certain proportion; and that A. pay the same as trustee out of the property held by him in trust. *Held,* that A. had no ground of objection.

PETITION, filed August 5, 1884, under the St. of 1875, c. 200, § 3, for the appointment of commissioners to determine the parties benefited by defences to protect the banks of the Connecticut River, built in accordance with the provisions of said statute,* and to apportion the cost thereof.

---

* " Section 1. The county commissioners of Hampshire shall, as soon as may be after the passage of this act, proceed to construct proper defences above the Northampton Bridge, to prevent the washing away of the banks of the Connecticut River in the towns of Hadley and Northampton, near said

The record of the county commissioners made on August 4, 1884, which formed part of the petition, showed that the total expenditure to September 1, 1876, was $9221.15 ; and that the total amount of principal and interest to the date of the record was $14,309.12.   The difference between these amounts was arrived at by making rests in 1877 and 1880, and charging interest on the new principal composed of principal and interest,

---

bridge, and they shall direct the expenses and charges for said work to be paid out of the treasury of said county.

" Section 2.   Upon the completion of said work, said commissioners shall make a record, in detail, of their doings and of the amount of actual expenditure incurred as herein provided, including such damages as may be assessed for land or property taken or injured in the execution of said work, and also the charges of said commissioners for their services.   And the amount of such expenditures as aforesaid shall be borne by said county and such towns, persons, and corporations, and in such proportions as the commissioners appointed as hereinafter provided shall determine.   And like proceedings shall be had for the collection of the same from such towns, persons, and corporations, and like authority and power shall be vested in said county commissioners, as are provided in sections forty-nine and fifty of chapter forty-three of the General Statutes.

" Section 3.   Upon the petition of the county commissioners the Supreme Judicial Court sitting in any county, or any justice thereof, after such notice as they may order, shall appoint a board of three commissioners, and said commissioners, having first been duly sworn to the faithful and impartial discharge of their duties, shall, after due notice to all parties interested, determine and decree what towns, persons, and corporations, including said county, are benefited by said work, and what proportion of the cost of said work, as provided in section second of this act, shall be paid severally by them, and their determination and decree, or of a major part of them, shall be made in writing and reported to the Supreme Judicial Court at a term of said court for said county of Hampshire, and notice thereof given to all parties interested, at least thirty days before the sitting of the court to which such report is made.   Any party affected by the decree, and dissatisfied with the determination of the commissioners, may appeal to a jury from the award of the commissioners ; and the Supreme Judicial Court shall have authority to make all necessary orders and decrees in reference thereto.   Any party so appealing, who shall not obtain by verdict of said jury an award more favorable than by said decree, shall forfeit and pay all costs of hearing and trying such appeal.   If no party shall so appeal to a jury during the term of the court to which such report is made, the decree shall be absolutely binding upon all parties interested therein, when the same shall have been accepted and judgment entered thereon by the Supreme Judicial Court.   The just fees and expenses of said commissioners shall be paid by such of the parties interested as said commissioners shall decree."

and deducting certain sums for materials sold in those years, these sums being less than the interest then due.

Commissioners were appointed in accordance with the prayer of the petition; and they on December 20, 1884, filed in this court a report of their doings. The report stated that the amount expended in protecting the banks of the river, with accrued interest thereon, was $14,309.12; that the Massachusetts Central Railroad Company had located its road from Northampton to Boston, and partly constructed the same, and in so doing had built stone piers and abutments in and on the banks of the Connecticut River, in partial completion of a railroad bridge within its location, one of which abutments was located where the river had been making rapid encroachments, and had partially undermined its foundation and threatened the road-bed adjacent thereto, and under and about which abutment considerable of the work in question was done; that, in pursuance of the St. of 1883, c. 64,* Samuel N. Aldrich, Thomas H. Perkins, and Henry Woods had bought and then owned all the property which had belonged to the said Massachusetts Central Railroad Company, including said abutment and road-bed, with the purpose to convey the same to the Central Massachusetts Railroad Company; that a new corporation had been organized in accord-

---

* Section 1 of this act extends the time in which the Massachusetts Central Railroad Company may locate and construct its railroad.

Section 2 provides that the railroad company may issue preferred stock to each holder of its mortgage debt.

Section 3 provides that, in the event that § 2 shall fail to take effect, "Samuel N. Aldrich, Thomas H. Perkins, and Henry Woods, or any two of them, for and on behalf of the holders of said mortgage debt, whenever the trustees under said mortgage shall sell the mortgaged property as therein provided, may purchase the same on behalf of the holders of said mortgage debt, and thereupon shall take a conveyance of said property from said trustees, and shall hold the same in trust for and on account of said holders, but absolutely in fee, and free from every right and equity of redemption of the mortgagor." The section further provides for the formation of a corporation, immediately after the sale, by the holders of the mortgage debt, to be called the Central Massachusetts Railroad Company.

Section 4 provides that "the corporation organized under the provisions of the preceding section shall have all the rights, franchises, powers, and privileges at any time granted to or vested in, and shall be subject to all the debts, duties, liabilities, . . . . and restrictions imposed upon, said Massachusetts Central Railroad Company."

ance with said statute by the name of the Central Massachusetts Railroad Company; and that the Massachusetts Central Railroad Company, Messrs. Aldrich, Perkins, and Woods, and the Central Massachusetts Railroad Company were all represented at the hearing by counsel.

The report further stated, that the commissioners determined and decreed that the towns of Hadley and Amherst, the city of Northampton, the county of Hampshire, and the Massachusetts Central Railroad, or the Central Massachusetts Railroad Company, or Samuel N. Aldrich, Thomas H. Perkins, and Henry Woods, whichever may turn out to own the franchise of said railroad, were benefited; that said town of Hadley should pay eight thirtieths of said expense, the town of Amherst one thirtieth, the city of Northampton eight thirtieths, and the county of Hampshire eight thirtieths; that the Massachusetts Central Railroad, or the said Samuel N. Aldrich, Thomas H. Perkins, and Henry Woods, or the said Central Massachusetts Railroad Company, should pay five thirtieths of said expense; and that the commissioners submitted to the court which of the parties last mentioned should pay said five thirtieths.

After the decision of this court, reported 140 Mass. 181, that the commissioners could not submit this question to the court, the case was recommitted to the commissioners; and they, after a hearing, found that Samuel N. Aldrich, Thomas H. Perkins, and Henry Woods, "the owners in fee of the property mentioned in chapter 64 of the laws of 1883, are benefited, and should pay of the costs of said work five thirtieths of the whole." In other respects the commissioners affirmed the report already made.

After the supplementary report was filed in this court, an appeal to a jury was claimed by Northampton and Hadley, and by Aldrich, Perkins, and Woods.

The cause was then tried before *Field*, J., who reported the questions arising at the trial, for the determination of the full court, in substance as follows:

The city of Northampton contended, and asked the judge to rule, that its appeal opened to the consideration of the jury the entire question of what parties were benefited, and the proportion to be assessed to each. The judge ruled that the appeal

only opened the question of the liability of the city, and the amount of it. Said city, by its attorney, stated in open court, that, unless its appeal opened the whole question of parties and proportions, it did not desire to have submitted to a jury the single question between it and the county whether the proportion should stand or be changed.

All the parties appealing contended that there was such laches, in law and in fact, that no portion of the actual expenditure could be recovered. It was admitted that the entire expense, $9221.15, was incurred prior to September 1, 1876, and that no expenditure except for interest was made after said date. If the evidence was competent, it was agreed that the county commissioners would testify, and the petitioners offered to show by their testimony, that the delay to petition for the appointment of the special commissioners was to see the effect of their work done, and to determine if it was necessary to do any more work than had been done to properly protect the river banks. The judge rejected this evidence, and ruled that there was no laches which would prevent an assessment against parties benefited.

It was also objected by the appellants, that interest charged formed no part of the actual expenditure which was to be assessed. The judge ruled that interest could be included.

Aldrich, Perkins, and Woods contended, and asked the judge to rule, as matter of law, that they were not liable for any portion of said expenditure. It was admitted that the work done in 1875 and 1876 was a benefit to the structures, which were then the property of the Massachusetts Central Railroad Company; that said company was duly authorized, and did, by mortgage deed dated January 1, 1880, and duly delivered and recorded, convey all its franchise and estate to Thomas Talbot and others, in trust to secure certain bonds of said railroad company thereafter to be issued; that on September 1, 1884, said mortgage was foreclosed, by sale, and, under the authority of the St. of 1883, c. 64, Aldrich, Perkins, and Woods purchased the same for and on behalf of the bondholders secured by said mortgage, in accordance with the provisions of § 3 of said act, and still hold the same for the purposes provided therein. The judge declined to give the ruling requested.

Aldrich, Perkins, and Woods further asked the judge to give the following ruling: The St. of 1875, *c.* 200, creates no lien on the franchise and property of the Massachusetts Central Railroad Company for said work, or against *bona fide* grantees taking title subsequent to the completion of said work. If Aldrich, Perkins, and Woods took their title on or after September 1, 1883, seven years at least after the work was completed, and there was no lien on said franchise and estate, they cannot be made liable for any assessment for said work.

The judge refused, on the undisputed facts, to give these rulings, but ruled, for the purposes of the trial, that, if the structures and property of the Massachusetts Central Railroad Company were benefited, as found by the commissioners, the real property held by Aldrich, Perkins, and Woods, as grantees and trustees under the purchase and conveyance to them, pursuant to the St. of 1883, *c.* 64, might be held liable for the proportion of the expense found by the commissioners, although they personally could not be held liable.

The county of Hampshire desired that the report of the special commissioners be accepted; and contended, as to the amount to be assessed, that all parties were concluded by the county commissioners' record, made August 5, 1884, that the total, principal and interest, to August 1, 1884, was $14,309.12, as there stated; and that interest should be computed since said date on said sum.

The judge ruled that the sum to be assessed (the same not being otherwise in dispute than as before stated) was $9221.15, with interest from September 1, 1876, to the date of the verdict, deducting certain admitted credits.

The jury found that the actual expenditure incurred, under the St. of 1875, *c.* 200, including simple interest to the date of the verdict, was $14,221.31; and apportioned twenty-five thirtieths of this sum between the county, the city of Northampton, and the towns of Hadley and Amherst, in the manner stated in the commissioners' report. The verdict as to the remaining five thirtieths was as follows: "And that the real property formerly of the Massachusetts Central Railroad Company, and now conveyed to and held by Samuel N. Aldrich, Thomas H. Perkins, and Henry Woods, pursuant to chapter 64 of the acts of 1883,

pay the remaining five thirtieths, to wit, $2370.22; and that the said Aldrich, Perkins, and Woods pay the same as trustees out of said property held by them in trust."

*W. G. Bassett*, for the county.

*J. C. Hammond*, for the town of Hadley.

*T. G. Spaulding*, for the city of Northampton.

*E. Parsons*, for Aldrich, Perkins, and Woods.

MORTON, C. J.    The object of the St. of 1875, *c.* 200, was to secure the protection of the banks of the Connecticut River, a great public improvement, in which the county of Hampshire and many towns, corporations, and individuals were interested. The scheme of the statute is, that the work shall be done and the expenses borne in the first instance by the county of Hampshire. Upon the completion of the work, the county commissioners are required to make a record of their doings, and of the amount expended, or cost, and thereupon three special commissioners are to be appointed by this court to "determine and decree what towns, persons, and corporations, including said county, are benefited by said work, and what proportion of the cost of said work . . . . shall be paid severally by them." Section 3 provides that "any party affected by the decree, and dissatisfied with the determination of the commissioners, may appeal to a jury from the award of the commissioners."

In the case before us, commissioners were duly appointed, who have made their decree, and the case was heard before a single justice and a jury upon the several appeals taken by the parties interested.    The presiding justice has reported to the full court several questions of law which arose at the trial.

1. The city of Northampton contended that its appeal opened to the consideration of the jury the entire question of what parties are benefited and the proportion to be assessed to each.  We think that this claim is based upon a broader construction of the statute than it will reasonably bear.   The statute evidently contemplates that there may be many parties affected by the decree, and that each party, severally and independently, should have a right of appeal.    There is no reason why an appeal by Northampton should draw in question the rights of other towns, and compel them to bear further litigation.   The question whether Hadley is liable, and to what amount, concerns Hadley alone,

and Northampton has no interest in it. If an appeal by one
party opens the entire case, it would open it not only as to
the rights and proportions of all the other parties to the 'rec-
ord, but would involve the inquiry whether other towns and
parties are not benefited; and it would present a case of such
complication and difficulty that it could not be satisfactorily
tried before a jury.

We do not think the Legislature intended this. It intended
that " any party affected by the decree " might appeal indepen-
dently of the other parties, and might retry its case to the extent
to which it is affected, and such appeal will open the case only
so far as is necessary for determining the rights of the appealing
party. The ruling of the court, that the appeal by Northampton
opened the question of the liability of the city and the amount
of it, gave to the city all that it is entitled to, as it permitted
it to prove, if it could, that it was not benefited, and that the
amount assessed to it was too great. The Legislature could
legally grant such limited right of appeal as it saw fit. *North-
ampton Bridge case*, 116 Mass. 442. *Sunderland Bridge case*,
122 Mass. 459.

We cannot think that it was the intention of the Legislature
that, on appeal by any one party, a jury should revise the whole
proceedings of the commissioners, and should try the whole case
*de novo*. It would be impracticable to frame issues and to try
such a case intelligently before a jury. On the contrary, we
think the intention was to give to each party assessed by the
award of the commissioners the right to appeal separately, and
to try only the question of its liability and the amount thereof.
The county is the only party liable to be injured by this con-
struction, since if, upon appeal, any party procures a verdict
more favorable to itself than the award of the commissioners,
the difference would fall upon the county, but we think this
was one of the risks imposed upon the county when the Legis-
lature required it to pay the expenses of the work and to seek
its reimbursement from the towns and corporations adjudged to
be benefited by it.

2. All the appealing parties contended that there was such
laches in law and in fact that no portion of the actual expendi-
ture could be recovered. The court properly ruled that there

was no laches which would prevent an assessment against the parties benefited. The doctrine of the loss of a party's rights by his laches in enforcing them has no application to the case. The statute does not fix any time within which the county commissioners must complete the work and bring their petition for an assessment of the expenses. This is left to their discretion. *Fairbanks* v. *Mayor & Aldermen of Fitchburg*, 132 Mass. 42. Beside this, the county commissioners do not act, in performing their duties under this statute, as the agent of the county. They act as a board of public officers to whom the Legislature saw fit to entrust this duty, and they represent and act for each of the appellants as much as for the county. If. there has been unreasonable delay on their part, there is no reason why the county, which is as much injured by it as any other party, should bear the burden of the other parties interested.

3. The court rightly ruled that interest upon the sums expended by the county could be included as a part of the expenditure to be assessed. The statute clearly contemplated that the whole cost of the work should be divided between the county, towns, and corporations benefited. Under it money had to be expended at once, and from time to time, and a long time would elapse before the county could obtain reimbursement. Interest upon the money thus expended is fairly an incident and part of the cost. There is no good reason why this part of the cost should be borne exclusively by the county. It advanced the money, not for its own use exclusively, but for the use and benefit of all parties interested in the work, and it is just that it should be reimbursed for this part of the cost. *Haverhill Bridge* v. *County Commissioners*, 103 Mass. 120.

4. The defendants Aldrich, Perkins, and Woods contended, as matter of law, that they were not liable for any portion of the expenditures. We are of opinion that the presiding justice rightly refused so to rule. It is admitted that the work done is a benefit to the structures which were then the property of the Massachusetts Central Railroad Company, and were, at the time of the adjudication and decree of the commissioners, the property of the three defendants as trustees. These trustees do not hold the property strictly as private purchasers. They hold it under authority of, and subject to the trusts declared in, the

VOL. XXIX.                    28

St. of 1883, *c.* 64.   It was the intent of this statute, that, while the property remained in the hands of the trustees, and after the organization of the new company, they should be subject to the duties and liabilities of the Massachusetts Central Railroad Company.   That company was under an inchoate liability to be assessed for a portion of the expenses of the improvement of the river, and the trustees continued subject to this liability.   We think the special commissioners rightly held that the trustees, being the owners of the property of the railroad at the time of their award, were liable for a portion of the expenses, within the meaning of the St. of 1875.

These respondents object to the ruling of the court, that the property held by them as trustees is liable for a proportion of the expense, though they are not personally liable, upon the ground that this ruling and the verdict of the jury under it departed from the award of the commissioners, and introduced a new party.   The ruling is substantially that the respondents are liable as trustees, and the verdict of the jury is to the same effect.

The whole record of the special commissioners shows that they are throughout dealing with Aldrich, Perkins, and Woods, as trustees under the St. of 1883, and their award that these three respondents should pay five thirtieths of the expense clearly means these respondents in their capacity of trustees.   There is no variance between this award and the verdict; and the ruling of the court did not introduce any new party.

5. The county contended that the special commissioners and the court are bound to take the report of the county commissioners as conclusive; and therefore that the sum found by them, $14,309.12, with interest to the date of the verdict, should be divided among the several parties according to the proportions established by the special commissioners.   The court ruled that the sum to be assessed was $9221.15, being the amount of the actual expenditures, with simple interest added to the date of the verdict.

The report of the county commissioners shows that the total expenditure to September 1, 1876, was the said sum of $9221.15. The other charges, which increase the amount of their account to $14,309.12, are for interest.

The claim of the county results in giving compound interest, which we think ought not to be allowed.

It is true that the report of the county commissioners as to their expenditures is conclusive upon all parties, and that this court cannot revise it so far as to inquire into the amount or propriety of the expenditures. But the question of what interest should be allowed is a question of law, which appears upon the face of the report. No harm is done to any one by considering this question upon the record as it now stands, instead of resorting to an auxiliary writ of certiorari, which would raise precisely the same question.

Upon the whole case, we are of opinion that the rulings at the trial were right; and that judgment should be entered according to the verdict of the jury.                    *Judgment accordingly.*