JOHN H. CORCORAN & others *vs.* BOARD OF ALDERMEN OF CAMBRIDGE & others.

Middlesex.    March 20, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Tax*, Assessment, Street Watering, Abatement.  *Statute.  Certiorari.*

R. L. c. 26, §§ 26, 27, providing for a tax upon estates abutting upon streets which a city has determined to water, is not unconstitutional in not giving the owner of such an estate an opportunity to be heard in regard to the assessment, since § 27 provides that such assessment in many specified particulars shall be like the annual tax upon property and " shall be a part of the tax for that year on such " estates, " but the assessors shall make no abatement thereof except upon the recommendation of the board or officer by whom," under § 26, a list, containing information for their guidance in making the assessment, was certified to them; and thus by implication gives to persons assessed a right to be heard before the assessors upon an application for an abatement, and also a right, upon an appli-

cation for a recommendation of an abatement to the board or officer who certified the list to the assessor, to be heard upon all questions affecting the validity and amount of the assessment, and it is the duty of such board or officer to give the recommendation, and the duty of the assessors to make the abatement, if, upon a hearing, the assessment seems to be unwarranted or excessive.

An assessment of a tax for street watering, assumed to have been made under R. L. c. 26, §§ 26, 27, upon vacant, unimproved land is illegal, and, upon application made to the assessors for an abatement and to the board or officer, whom the board of aldermen had designated to certify to the assessors for their guidance in assessing the tax the lists specified in § 26, for a recommendation of an abatement, it would be the duty of such board or officer to make the recommendation, and of the assessors to make the abatement.

Where assessments of a tax for street watering have been made under R. L. c. 26, §§ 26, 27, according to the linear feet of frontage upon the streets watered of various parcels of land of different sizes and shapes, situated in different portions of a city under different conditions of travel, occupation and population and upon streets of varying widths, while full effect must be given in all ordinary cases to the legislative determination that such assessment, where conditions are similar, is as nearly proportional and equal as is reasonably practicable, nevertheless, if it appears that an assessment made in this way will impose upon any property a liability substantially in excess of the special benefits conferred, such an assessment cannot lawfully be made.

At the hearing of a petition for a writ of certiorari to quash an assessment of a tax for street watering assumed to have been made under R. L. c. 26, §§ 26, 27, by a city, it appeared that the total tax assessed for this purpose was $34,000, of which $564 was assessed upon estates of the petitioners, that the estates of the petitioners were parcels of land of different sizes and shapes, situated in different portions of the city, under different conditions of travel, occupation and population and on streets of varying widths, that $19 of the tax was assessed illegally on the land of one of the petitioners because the land was vacant and unimproved. *Held,* that there was not shown such a departure from the correct application of the statute as to require the quashing of the entire assessment as illegal, and that the petitioners had no remedy except by proceedings for an abatement.

Assuming to act under the provisions of R. L. c. 26, § 26, the board of aldermen of a city, without first having determined by vote that the whole or any part of the streets of the city should be watered at the expense of the abutters, passed an order on March 5 of a certain year estimating the expense of the watering as $40,000, directing that four fifths of the expense be borne by abutters and that the rate of the tax assessed be four cents per linear foot of frontage upon the abutting estates, and designating the superintendent of streets as the officer to determine the amount of the assessment upon each estate and to make the lists required by § 26 and to commit them to the assessors. The vote was approved by the mayor on March 7. On April 2 the board of aldermen adopted an order determining that " all the public ways within the limits of the city " should be watered. At some time before September 16, the exact date not more definitely appearing, the superintendent of streets made the lists required by § 26 but kept them in his office, which was directly under that of the assessors, where the latter had access to them. The assessors had upon their own books all of the details contained in the superintendent's books. The assessors made an assessment upon abutters amounting to $34,278.58 on August 31, at the rate of four cents per linear foot. On September 16 the superintendent of streets gave to the assessors a certificate that " the amount of street watering assess-

ment as shown by the detailed books in this office is $34,278.58," and stated the amount to be assessed by wards. It appeared that the net expense of such watering was $38,440.66, which included the value of water used for the purpose from the city's waterworks, $8,273.52. *Held,* that no such irregularity appeared in the assessment as to justify the issuance of a writ of certiorari quashing it.

In making the estimate of the cost of watering the streets of a city for the purpose of an assessment upon abutters under R. L. c. 26, §§ 26, 27, it is proper to include the value of water used from the city's waterworks by the department which had charge of the watering, although there never was any charge made as to such water as between the departments.

PETITION filed in the Supreme Judicial Court for the county of Middlesex December 31, 1907, for a writ of certiorari to quash an assessment of the expense of watering streets in Cambridge made under R. L. c. 26, §§ 26, 27.

The petitioners were owners of several parcels of land of different sizes and shapes, situated in different portions of Cambridge, under different conditions of travel, occupation and population and on streets of various widths.

The respondents were the board of aldermen, the board of assessors and the superintendent of streets of Cambridge.

The petition was heard before *Morton,* J., and reserved for the consideration of the full court upon the petition and returns and certificates of the various respondents.

It was agreed that the land of John Reardon Sons Corporation, one of the petitioners, was during the year 1907 vacant, unimproved, partially fenced and unused.

The following appeared to be the facts:

On March 5, 1907, the board of aldermen of Cambridge adopted the following order: " Ordered: That it is hereby estimated and determined that the expense of watering all the public ways within the limits of this city for the present municipal year will be the sum of $40,000: that four-fifths of the expense thereof shall be borne by the abutters: that four cents per linear foot of frontage shall be the rate assessed upon each linear foot of frontage of estates abutting upon such public ways; and that the superintendent of streets is hereby designated as the officer to determine the amount of such assessment upon each estate, and, to make, certify and commit to the board of assessors of taxes of this city, the list required under the provisions of " R. L. c. 26, §§ 26, 27. This order was approved by the mayor on March 7.

On March 26, 1907, the board of aldermen and common coun-

cil by concurrent action passed the annual appropriation order "towards defraying the expenses of the city . . . for the financial year beginning December 1, 1906, and ending November 30, 1907," in which was the item: "4.8 Street Sprinkling . . . $30,300." This order was approved by the mayor on March 28. An additional appropriation of $1,000 for the same purpose was made on October 15, 1907, "to be met from revenue received from uncollected taxes for the year 1906 and previous years." The latter order was approved by the mayor on October 17.

On April 2, 1907, the board of aldermen adopted in concurrence with the common council, and on April 6 the mayor approved, the following order: "Ordered: That it is hereby determined under the provisions of" R. L. c. 26, §§ 26, 27, "that all public ways within the limits of the city of Cambridge, shall be watered for the present municipal year in part at the expense of the abutters." No such order had been adopted before the order approved on March 7.

Before August 31, 1907, the assessors, having been given copies of the above orders approved on March 7 and April 6, assessed upon the estates abutting upon public ways in said city the proportion of the expense for watering such public ways to be borne by the abutters at four cents per linear foot of frontage upon each linear foot of frontage of the estates abutting upon such public ways. The estates of all of the petitioners were so assessed. The total amount of such assessments was $34,278.58. The total amount assessed upon the estates of the petitioners was $564.67.

On September 16, 1907, the superintendent of streets in a communication to the board of assessors made certificate that "the amount of street watering assessments for the present year as shown by the detailed books in this office is ". $34,278.58, and stated the amount to be assessed to each ward.

On August 31, 1907, the assessors committed the tax list with their warrant to the collector of taxes. The amount named therein as "street watering assessment" was $34,278.58.

The petition averred that the superintendent of streets previous to the assessment above described did not "cause to be made any list of such streets as were to be watered, or any list specifying each estate and the number of linear feet thereof abutting

thereon, and the amount per linear foot, and the amount on each estate of such street watering assessments, and did not certify or commit such lists or any of them to the assessors of taxes previous to the date of the assessment," as called for by R. L. c. 26, § 26.

The certificate of the respondent superintendent of streets stated, as to the above allegation in the petition, that the details of the street watering assessment, contained in his letter to the assessors dated September 16, 1907, including the names of the owners, the locations, areas and street frontages, were previous to the date of that letter "and are now" of record upon the record books of the board of assessors, that he had prepared and placed upon record in his office as superintendent of streets a list of the public streets of said city to be watered in accordance with the aforementioned orders of the board of aldermen dated respectively March 5 and March 12, also specifying upon such records each estate, the number of linear feet thereof abutting thereon, the amount per linear foot and the amount on each estate of each assessment in accordance with said orders of said board of aldermen, but that, previous to the filing of this petition, he had not formally certified and committed said list to the board of assessors, inasmuch as, upon comparison of his records with the records of the said board of assessors, it was found by him that his records as to the name of the owner, the location, area, street frontage and street watering assessment in each case corresponded in every particular with the records of the board of assessors relating thereto ; that his records were in the same building one floor below the room in which the records of the board of assessors were kept, and have always been accessible and at all times open to the inspection and comparison of the board of assessors.

The petition also averred that the total expense of watering the streets of the city for the municipal year 1907 amounted to $31,291.09, which was subject to a deduction of "revenue received from collections other than from assessments," amounting to $1,123.95, leaving as the net expense of the street watering $30,167.14 ; and the petition gave a list of the items making up the total; and it also averred that four fifths of said total expense, which, according to the vote of the board of aldermen

of March 5, was to be paid by the abutters, amounted to the sum of $24,133.71.

The certificate of the respondent superintendent of streets stated that "the total expense incurred by the city and the value of the water used in watering the public streets was $39,564.61," which was subject to the deduction for "revenue received from collection other than from assessments," stated in the petition, leaving a net expense of $38,440.66 ; and that the items of the total expense were the same as set forth in the petition, except for the following additional item: "10,341,900 cu. ft. water used in watering streets during the year ending Nov. 30, 1907, @ 8c per 100 cu. ft. — which is substantially the price established for metered water by ordinance, $8273.52." As to this item, he certified : "The watering of all such public ways was done under the general care and charge of and by the street department of said city. No charge was made to the street department by the water works department which furnished the water in watering the streets, and no credit was given to the water works department for the water so used, and the books of record of the city auditor show no payment to, or credit to the water works department for the water so used."

*E. M. Parker*, for the trustees of the University Associates.

*H. J. Coolidge*, for the trustees of the Harvard Riverside Associates and others.

*F. J. Carney*, for George G. Wright and others.

*G. A. A. Pevey*, for the respondents.

KNOWLTON, C. J. This is a petition for a writ of certiorari to quash an assessment of the expense of watering streets in the city of Cambridge, made under the R. L. c. 26, §§ 26 and 27. The most important question in the case is whether the statute is unconstitutional, because it gives the owner of the property assessed no opportunity to be heard in regard to the assessment. If no such opportunity is secured to him by the statute, it is invalid as an attempt to take his property without due process of law. *Sears* v. *Street Commissioners*, 173 Mass. 350, 355, and cases cited. See also *Norwood* v. *Baker*, 172 U. S. 269 ; *Adams* v. *Roanoke*, 102 Va. 53, 63. But if the right to a hearing is given upon an appeal, or upon an application for an abatement, it is sufficient. *Sears* v. *Street Commissioners, ubi supra*, and cases cited.

In § 27 this statute specifies particulars in which the assessment is to be like the annual tax upon property, and declares that it "shall be a part of the tax for that year on such estate." Then follows this provision : "But the assessors shall make no abatement thereof except upon the recommendation of the board or officer by whom the list was certified to them." In this it is assumed that, as in the case of other taxes upon property, there is a right to apply to the assessors for an abatement. Their right to grant the abatement is limited by the requirement of a recommendation from the board or officer who certified the list on which the assessment was founded. That the landowner has a right to apply for an abatement, and that the assessors have a right to grant it, upon this recommendation, is as plain as if it were stated expressly, instead of being implied unquestionably. That the board or officer may make such a recommendation is included in the provision, and this also includes a right on the part of the landowner to apply for the recommendation, and to present his reasons for asking for it. We interpret the statute as giving him this right, and including an official duty on the part of the board or officer to hear him and pass upon the merits of his claim and give him the recommendation for an abatement, if it appears that the tax or any part of it was improperly assessed. While the statute is not explicit in stating particulars, it plainly implies all that is necessary. It has been before the court three times, and in two cases it was expressly held to be constitutional, although this question was not raised by counsel nor considered by the court. *Sears* v. *Aldermen of Boston,* 173 Mass. 71. *Ward* v. *Aldermen of Newton,* 181 Mass. 432. *Hodgdon* v. *Haverhill,* 193 Mass. 327. The statute, with an amendment applicable only to the city of Boston, was considered further in *Stark* v. *Boston,* 180 Mass. 293. This amendment provides for a division of the territory of the city into districts, and gives persons aggrieved by a charge for watering streets a right to apply to the board of street commissioners for an abatement. The assessment upon each estate is made by the assessors. As the application for an abatement is to a different board from that which assessed the tax, there is a direction that they shall consider the assessment, and abate it if it is unreasonable, and that the treasurer of the city shall repay the amount abated if it has been col-

lected.   As to the particulars of the application and the hearing, little more is stated than is necessarily included in the implication of the R. L. c. 26, § 27.   We are of opinion that the section just cited gives persons assessed the right to be heard before the assessors upon an application for an abatement, and a right also to be heard upon all questions affecting the validity and amount of the assessment, upon an application for a recommendation to the board or officer who certifies the list to the assessors, and that it is the official duty of such board or officer to give a recommendation, if, upon hearing, the assessment seems to be unwarranted or excessive.   In this respect the statute meets the requirements of the constitution.

It appears that one of the petitioners is the owner of a parcel of vacant, unimproved land, upon which a tax for watering streets to the amount of $19.84 was assessed.   If application had been made to the assessors for an abatement and to the superintendent of streets for a recommendation, the petitioner would have been entitled to have this tax abated.   It is contended that the assessment upon all the abutters in the city should be quashed because of this erroneous assessment.

In *Sears* v. *Aldermen of Boston*, 173 Mass. 71, in *Stark* v. *Boston*, 180 Mass. 293, in *White* v. *Gove*, 183 Mass. 333, and in *Cheney* v. *Beverly*, 188 Mass. 81, the subject of the assessment, at a certain rate per front foot, of lands abutting on a street was considered.   In these, and in numerous other cases, it is held that special taxation of this kind in substantial excess of the special benefits received is illegal.   In the first two of these cases it was assumed that there might be occupied lands, abutting upon streets in remote places within the limits of a city, that would receive no special benefit from watering streets, and upon which a special tax for the cost of it could not legally be assessed.   In *White* v. *Gove*, at page 337, we find this language : " If, in any city, it should be determined that the watering of a public way through a forest should be paid for by the abutters, there might be a remedy by certiorari for a decision without foundation in law.   The constitutionality of the statute depends upon the fact that a classification is called for, and the provision for an assessment upon the abutters applies only to those places, determined upon by the board of aldermen, where there will be

special benefits from the watering." In *Stark* v. *Boston, ubi supra,* it is said that the statute, although it does not say so in terms, "requires that the assessments shall be founded on special and peculiar benefits, and shall be reasonable and proportional." In *Cheney* v. *Beverly,* 188 Mass. 81, 85, the court says of the R. L. c. 49, § 5: " We are of opinion that the statute should be construed as if it contained the words ' but in no case shall an assessment be made that exceeds the special benefit received by the estate assessed.' " We are of opinion that there is the same implication in the R. L. c. 26, §§ 26, 27.

It follows that, while full effect must be given in all ordinary cases to the legislative determination that an assessment by the front foot, where the conditions are similar, is as nearly proportional and equal as is reasonably practicable, if it appears that an assessment made in that way will impose upon any property a liability substantially in excess of the special benefits conferred, such an assessment cannot lawfully be made. In such exceptional cases, as was held in *Stark* v. *Boston, ubi supra,* if an assessment has been made erroneously it should be abated. That remedy will usually be ample to relieve from mistakes made upon streets running through lands occupied with buildings. In that case there was an attempt to recover back an assessment paid under protest. The court said of the remedy by abatement that it " is the only one that can be availed of under the statute. . . . The landowner ought not to be permitted in proceedings for the enforcement of the assessment, or in a suit to get back the money after it has been paid, to show that no special or peculiar benefits were received." The court was not considering whether, if there was an assessment in utter disregard of the purpose and intent of the statute, such as a failure to attempt a distinction between different parts of a city which were very unlike, and a charge upon abutters for watering streets through a long strip of waste land, the proceedings might be quashed on certiorari, according to the intimation in *White* v. *Gove, ubi supra.* We treat that question as undecided.

In the present case we have before us no assessments but those of the petitioners. The assessment covered all the streets of the city, but, except what appears in considering the assessments upon the land of the petitioners, we have nothing to show whether the

proceeding was such a departure from a correct application of the statute as to require us to quash the assessment as illegal. Upon the case as it is stated, we think the petitioners have no remedy but by a petition for an abatement.

There were certain alleged irregularities in making the assessment. We are of opinion that the order approved April 6, 1907, was a sufficient determination that all the public ways in the city were to be watered in part at the expense of the abutters, and that the fact that it was not made until after the order of the board of aldermen bearing date March 5, 1907, does not affect the validity of the proceedings. The expense was to be estimated under the statute, and the rate per front foot was to be determined in reference to the estimate. We are of opinion that the slight inaccuracy in the estimate and in the amount of the assessment, in reference to the amount which was afterwards expended, does not affect the validity of the assessment.

We are of opinion that the value of the water furnished by the city from its aqueduct, maintained at its expense, might be included as a part of the cost of watering the streets.

There was an irregularity in the action of the superintendent of streets in his failure to certify to the assessors, before the assessment, a list of the streets, and of the number of linear feet and the amount of the assessment on each estate, as required by the R. L. c. 26, § 26. But it appears that the assessors had in their office, before assessing the tax, the details for the assessment precisely like those which he should have certified, and they assessed the tax upon them. The failure of the superintendent to perform this duty did not affect the action of the assessors in making the assessment. As a writ of certiorari is not to be issued except when justice demands it, we are of opinion that this error does not require us to quash the proceedings.

*Petition dismissed.*