JAMES P. DUNN & another *vs.* MAYOR OF TAUNTON.

Bristol.     October 26, 1908. — November 25, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Taunton.    Municipal Corporations.    Sewer Commissioners.    Statute.*

Section 3 of St. 1904, c. 384, an act relative to sewerage expenses, assessments and charges, and to the powers of the sewer commissioners in the city of Taunton, requires assessments to be made for completed sewers or sections of sewers upon the estates benefited thereby, as soon as in each case this reasonably can be done, so that the expense of construction may be borne in proper proportion by the general taxpayers and those who derive special benefits from the construction, and, if the sewer commissioners neglect to take any action in the

matter and their delay becomes unreasonable, the mayor of Taunton may re-
move them under the power given to him by St. 1895, c. 219, § 4, re-enacted in
St. 1904, c. 384, § 9, which makes the sewer commissioners of the city of Taun-
ton "subject to removal by the mayor for cause."

SHELDON, J.   This is petition for a writ of certiorari to quash
the proceedings of the respondent as mayor of the city of Taun-
ton in removing the petitioners from their offices as members of
the board of sewer commissioners of that city.  At a hearing be-
fore a single justice of this court upon the petition and answer
and the exhibits attached thereto, the petition was dismissed;
and the case comes before us by an appeal from this order.

The respondent, at a hearing upon certain charges preferred
by him against the petitioners as a ground for their removal,
found that the first of these charges was proved.  This charge
was that the petitioners had neglected to take any action in the
matter of sewer assessments, as provided by St. 1904, c. 384, § 3.
That section reads as follows: " The sewer commissioners of
said city shall assess the owners of lands hereinafter described
within the territory embraced by said system of sewers, by a
fixed uniform rate based upon the estimated average cost of all
the sewers of said system.  In making such estimate and for
all purposes under this act, the cost of sewers in said territory
which were built prior to the adoption of said system, but which
have been made or are to be made a part thereof, shall be taken
to be their cost, after a reasonable deduction for depreciation, if
any, on account of age and use has been made.  Such assess-
ments shall be made as aforesaid on the lands in said territory
on every street or way in which the trunk sewer of said system
is constructed, or in which there is a common sewer, directly or
indirectly connected with said trunk sewer, whether such sewer
was built prior or subsequent to the fourteenth day of August,
eighteen hundred and ninety-seven, and shall be made according
to the frontage of such lands on such street or way, and accord-
ing to the area of such lands within a fixed depth from such
street or way; but no assessment in respect to any such land
which, by reason of its grade or level or any other cause, cannot
be drained into such sewer, shall be made until such incapacity
is removed; and in cases of corner lots and lots abutting on
more than one sewered street or way, the same area shall not

be assessed more than once. The lien hereinafter provided for shall attach to the parcel assessed. If payment has been made of any prior assessment or charge imposed in respect to any such land on account of any common sewer of said sytem, an allowance shall be made for such payment, and the owner shall be assessed for the remainder only. Said sewer commissioners shall certify all assessments made under this section to the collector of taxes of said city for collection. After receiving an assessment list, the collector shall forthwith send notice to each person assessed of the amount of his assessment, in like manner as notices of taxes are sent."

The findings and rulings of the mayor as to this charge, as set out at length in the record, are as follows : "The board of sewer commissioners is a board consisting of three members. William E. Bellamy and the respondents, William B. Granfield and James P. Dunn, were appointed members and took offices on the first Monday in February, 1907, for the term of one, two and three years, respectively. Bellamy served until the expiration of his term, January 31, 1908, and Granfield and Dunn remain in office. It appeared from the records of the board of sewer commissioners and from other competent evidence that no sewer assessments have ever been made as required by the St. 1904, c. 384, § 3, and that from the time the members of the board went into office on the first Monday in February, 1907, to the time of the hearing before me, no steps were taken by such members towards making assessments under the law cited. The statute of 1904 referred to was duly accepted by the city council of Taunton on July 21, 1904. There are about twenty-five miles of sewers in Taunton, of which about twenty-four miles consist of the trunk sewer and of laterals directly or indirectly connected therewith. The twenty-four miles of sewers are part of the system of sewers legally adopted by the city and referred to in the law cited. By the mandatory requirement of § 111 of this law, the sewer commissioners are bound to assess, in the manner specified, the owners of lands on every street or way in which such sewers are located. The statute went into effect over four years ago; the respondents have been in office for more than a year. Prior to their taking office the cost of all the then existing sewers within the system . . . [had] been determined, a

fixed uniform rate for assessments had been established, by competent experts, and all these things were matter of record. The necessary data for proceeding at once to make assessments as required by the statute referred to, on abutters on the twenty-four miles of sewers above described, were on file in the office of the sewer commissioners; but, as I find on the evidence, the respondents have negligently omitted to make or to take any steps towards making such assessments, I accordingly find that the first charge is sustained.

" On the question whether the neglect of the respondents thus found to comply with the requirements of the law referred to is sufficient cause to justify their removal from office, the circumstances are to be considered. The law which it is the duty of the respondents to obey, but which they have persistently disregarded, is entirely plain, and it was in evidence that their attention was called to it and to the necessity of proceeding under it, when they first took office. No valid excuse for their negligence has been offered by them, and none appears. They did not themselves testify at the hearing, but called Mr. Bellamy, their former associate, as a witness in their behalf. From a stipulation entered into at the hearing that if called they themselves would testify as Mr. Bellamy had testified, and from the argument of their counsel, the position which they take admits of no doubt. They give no intimation that if permitted to remain in office they will comply with the requirements of the law. On the contrary, they contend that they are the exclusive judges as to when, if at all, they shall take action under it, and in support of their contention they have called attention by their counsel to the case of *Fairbanks* v. *Fitchburg*, 132 Mass. 42, 48. The case is an authority against and not for the respondents' contention.

" Apart from the apparent unwillingness of the respondents to make assessments under the law, and the probability that if not removed they would persist in disregarding the law, I conclude from the evidence that the respondents are inexcusably ignorant of the true meaning and scope of the law and of the duties which it imposes on them. This was shown by the testimony of Mr. Bellamy, which, by the stipulation above mentioned, the respondents adopted as their own. Mr. Bellamy testified that the board had made no assessments under the law, because until

the entire sewer system is substantially completed it is impossible to determine its cost, and, therefore, until the happening of that event, the fixed uniform rate of assessment called for by the law cannot be established, it being necessary in fixing the rate to know the actual cost of all the sewers of the city. In other words, the theory advanced by Mr. Bellamy and concurred in by the respondents is that assessments in accordance with the requirements of the law cannot be made until substantially all the sewers of the city are completed. It is enough to say that it is not the actual cost, but the estimated cost, on which the rate is to be based, and that it may be a hundred years before the entire system is substantially completed, depending upon the growth of the city.

"What the law seeks to accomplish is briefly stated thus: The sewers of the city generally discharged into Mill River. This created a nuisance. To obviate the nuisance, a system of sewers was adopted, the main feature of which is a great trunk sewer, which at present empties into Taunton river, but later on is to take the sewerage to a filtration field in Berkley. All the lateral sewers of the system are to be connected directly or indirectly with the trunk sewer, thereby intercepting the flow of sewage into Mill River. While a sewer of small sections may be sufficient to serve an individual estate, obviously the sewer into which it empties must be larger if it is to receive the flow of several such sewers and so on to the trunk sewer. The latter, of course, is made of great size and therefore at great cost, in order that it may take the flow of all the lateral sewers of the system. As matter of fairness, then, under a system of sewers, the abutter should pay his proportional part of the cost of constructing, not merely the abutting sewer, but of constructing the system of sewers of which it forms a part; and this is just what the law seeks and requires. There are about twenty-four miles of existing sewers in the system of the city, all connected directly or indirectly with the trunk sewer. In order that abutters of these sewers, and on such sewers as may be added to the system from time to time in the future, may be called on to pay what they fairly ought to pay towards the cost of the system, the law provides that assessments shall be made presently on the abutters on existing sewers, who are now enjoying the benefit of the system, and hereafter on abutters on future sewers, when built, at a fixed

uniform rate based on the estimated average cost of all the sewers of the system. The methods to be employed by the assessing board in determining and laying the assessments are plainly stated in the law, and, in order that no injustice may be done in making assessments on abutters on old sewers, it is provided that allowance shall be made for any assessment which may have been paid in the past. The law is perfectly clear in itself. Moreover, it has been fully discussed and explained in official reports and documents, with which the respondents ought to be familiar.

"The conduct of the respondents in omitting to comply with the requirements of the law shows gross negligence, and, if not intentional disregard of the law, an incapacity to grasp its meaning or an indifference to it for which there appears to be no excuse. The plain inference from all the circumstances is that the respondents are not suitable persons to fill the extremely important position of sewer commissioners. The injury to the public interest which results from their failure to perform their duty and carry out the plain requirements of the law is serious. As I have already said, there are about twenty-four miles of existing sewers which are a part of the system of sewers adopted by the city, having been connected directly or indirectly with the trunk sewer, on account of which assessments should be made. The failure to make these assessments when they could and ought to have been made has deprived the city of the use of very large sums of money to which it is entitled, thereby adding to the burden of general taxation. It appeared in evidence that since the respondents went into office the sewer commissioners have in a few instances imposed a charge for the privilege of entering sewers, but this of course was not in any sense a compliance with the requirements of the law referred to. Moreover, while such a charge might have been permissible under the general statutes before the special law was passed, it probably was not warranted after the special law went into effect. The respondents have not only failed to look after the interests of the city, in that they have omitted to make assessments on account of the sewers which were in existence when they came into office, but they have failed to make assessments on account of the only sewer which they themselves have constructed. They built a

sewer on West Water Street which cost about $30,000, and it was shown that they have made no assessment on abutters, but have contented themselves with imposing in a single instance a charge for the privilege of entering the sewer.

" Having found on the evidence that the first charge is true, and this being in my opinion sufficient cause for the removal of the respondents, James P. Dunn and William B. Granfield, from office, I do hereby by virtue of the authority vested in me by St. 1904, c. 384, § 9, remove them from office as members of the Board of Sewer Commissioners."

It is provided by St. 1895, c. 219, § 4, that the sewer commissioners of the city of Taunton " shall be subject to removal by the mayor for cause," and this is re-enacted in St. 1904, c. 384, § 9. This is the same provision that was considered in *Hogan* v. *Collins*, 183 Mass. 43, in which it was said by this court that the decision of the mayor upon the facts " is not open to revision here, either to pass upon the weight of the evidence or to determine whether the evidence justified the finding. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 212." And in *Gaw* v. *Ashley*, 195 Mass. 173, it was held by this court that the official action of the mayor of a city under a power of removal " for cause " can be revised by this court only when there has been an arbitrary exercise of power, and the cause alleged for the removal is unreasonable and in law insufficient. And see to the same effect *Ayers* v. *Hatch*, 175 Mass. 489.

But the petitioners contend that the cause alleged and found by the mayor is insufficient in law to warrant their removal. They say in their brief that the only question which they seek to present is whether it was their duty, under any and all circumstances, to levy the general assessment provided for by St. 1904, c. 384, § 3, at once upon the completion of any section of the system of sewers, or whether the time of levying the general assessment was a matter resting within the sound discretion of the board, and whether a failure to levy the general assessment as soon as any section of the system was completed was a sufficient cause for their removal from office. They do not now contend, as they apparently contended before the mayor, that the general assessment should be delayed until the time, perhaps in

the remote future, when the whole system of sewers shall have been completed, so that the assessment may be based upon the actual cost of all the sewers, rather than upon their "estimated average cost," as the statute provides. It would have been difficult, if not impossible, to construe the statute as requiring, or even allowing, such a delay as this, with the protracted uncertainty of both the amount and the time of payment of the incumbrance which, under § 4 of the statute, thus would be cast upon at least a large part of the land in the city for perhaps a very long period of time.

But even the present contention of the petitioners goes too far. The board of which they were members had doubtless a certain discretion as to the time of levying the assessment in question; but it does not follow that on this ground they could delay indefinitely to perform the duty cast upon them. The manifest intent of the statute is to require assessments to be made for completed sewers or sections of sewers upon the estates benefited thereby, as soon in each case as this reasonably can be done, so that the expense of construction may be borne in proper proportion by the general taxpayers and those who derive special benefits from the construction. Upon the findings of the mayor under the first charge, the petitioners neglected to take any action in this matter, and their delay became unreasonable. There is nothing in *Fairbanks* v. *Mayor & Aldermen of Fitchburg*, 132 Mass. 42, 48, which helps the petitioners. That case merely decides that an assessment finally made by an assessing board which is not restricted by any positive rule as to the time of making the assessment cannot be declared to be void because of a delay of some six years in making it. A very different question would have been presented if there had been a direct complaint against the members of that board for their delay. We cannot say that the ruling * asked for by the petitioners should have been given, or that the cause of removal charged and found was insufficient.

---

* This refers to the following portion of the petition setting forth the proceedings before the mayor:

"At the conclusion of the evidence for the prosecution your petitioners requested the following ruling as to charge 1:

"As the time of levying the assessment under section 3, chapter 384, of the Acts of 1904, was a matter within the discretion of the board, the re-

The petitioners, apparently desiring to lay the foundation for a contention that the findings of the mayor were unwarranted, have, as they aver, set out in their petition the whole of the evidence presented to the mayor.     *Haven* v. *County Commissioners*, 155 Mass. 467, 471.     And although there is in the answer no admission of this averment and there has been no agreement upon the subject, still the averment is not denied in the answer. *Weed* v. *Boston*, 172 Mass. 28.     But the petitioners have not contended that the findings were not warranted by the evidence, if their request for a ruling was rightly refused; and we have not felt at liberty to go beyond the record.     This was not a case in which the respondent introduced extrinsic evidence to show that substantial justice did not require that the proceedings should be quashed, and thus opened the door to the petitioners to offer evidence upon that question.     *Ward* v. *Aldermen of Newton*, 181 Mass. 432, and cases there cited.

The decree dismissing the petition must be affirmed.

*So ordered.*

The case was submitted on briefs.

*J. B. Tracy & W. E. Kelley*, for the petitioners.

*H. F. Hathaway*, for the respondent.

---

spondents were within their rights as members of said board in not levying a general assessment and this charge is dismissed.

"The mayor refused so to rule, and your petitioners excepted to such refusal to rule.

"Your petitioners then put in evidence as follows: "    [Here followed a statement of the testimony of Bellamy.]

The averment in the petition of the reasons for the issuing of a writ of certiorari was as follows :

"Wherefore, your petitioners aver that said action of your respondent in removing your petitioners from their said offices was illegal and void and should be quashed for the following reasons :

"Because said proceedings were not in accordance with the common law and the rules thereof and that this respondent was not justified in law in making said removals.

"Because as a matter of law your petitioners were acting within their legal rights; that under the law it was within their discretion when the general assessment under chapter 384 of the Acts of 1904 should be levied."