CHARLES J. O'MALLEY *vs.* PUBLIC IMPROVEMENT COMMISSION OF BOSTON.

Suffolk. April 3, 1961. — May 9, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Municipal Corporations,* Sewer, Betterment. *Taxation,* Betterment, Sewer assessment. *Boston.*

There is no specific limitation of time for assessing a sewer betterment under St. 1897, c. 426, § 7A, inserted by St. 1945, c. 511, § 2, upon a parcel of land in Boston after it has been connected with a public sewer. [626–627]

An assessment of a sewer betterment under St. 1897, c. 426, § 7A, inserted by St. 1945, c. 511, § 2, upon a parcel of land in Boston about two years and seven months after it was connected with a public sewer was not delayed unreasonably. [627]

St. 1897, c. 426, § 7A, inserted by St. 1945, c. 511, § 2, does not authorize a sewer betterment assessment upon property in an amount exceeding the special benefit conferred on that property. [628]

---

The city of Boston, which had taken by eminent domain a sewer easement in a tract of land and had installed a sewer therein and paid for the installation from money appropriated for the purpose, without any original sewer betterment assessment, and which had had a tax title on the tract, had foreclosed it, and thereafter had sold the tract, was not, within St. 1897, c. 426, § 7A, inserted by St. 1945, c. 511, § 2, an "owner of the . . . [tract who had] paid for such sewer or . . . [had] paid any assessment for its construction" so as to preclude assessments of sewer betterments under that statute upon parcels in the tract after their connection with the sewer by the city's successor in title. [629–630]

PETITION for a writ of certiorari filed in the Supreme Judicial Court for the county of Suffolk on September 28, 1960, and transferred to the Superior Court.

The case was heard by *O'Connell, J.*

*James M. McDonough,* for the petitioner.

*William H. Kerr,* for the respondent.

CUTTER, J.  This is an appeal from the trial judge's dismissal of a petition for a writ of certiorari to quash two assessment orders of the commission.  The orders, dated April 13, 1960, assessed sewer betterments on fifteen of the parcels of land discussed in *O'Malley* v. *Commissioner of Pub. Works,* 340 Mass. 542, and related to the same sewers.  We do not restate the facts set out in the earlier opinion.

Connections to the sewers for various parcels were made under permit as follows: September 11, 1957, three parcels; April 9, 1959, three parcels; September 14, 1959, six parcels; and between October 13, 1959, and April 13, 1960, three parcels.  The two orders assessed to O'Malley and other owners of one or more of these parcels a portion of the cost of the two sewers in the amount of "the value of the benefit . . . other than the general advantage to the community, received by each . . . parcel . . . from the public improvement" by the two sewers completed August 18, 1949.  The assessments range from $106 to $180 per lot.  The lots vary slightly in frontage (from forty to sixty feet except for corner lots) and in size (from about 5,000 to about 8,000 square feet).  O'Malley has alleged that he is engaged in the construction of a dwelling on each lot and

is liable for the payment of the assessments if they are valid.

1. O'Malley contends that those assessments, not made within six months after the particular sewer connections, were not made seasonably. The assessments were made under St. 1897, c. 426, § 7A,[1] inserted by St. 1945, c. 511, § 2. The 1945 amendment separated into two sections, § 7[2] and § 7A, statutory provisions closely similar to those which theretofore had been combined in § 7 as amended by St. 1912, c. 371, § 1.[3] Section 7, as amended in 1945, restricts (see first italicized passage, footnote 2, *supra*) original betterment assessments to a period of "six months after any new sewer . . . is completed." Section 7A contains no such language. This omission hardly can have been an inadvertence, for the 1945 amendment of § 7 cut

---

[1] Section 7A, inserted by the 1945 act, reads, "The board of street commissioners . . . may assess upon any estate . . . hereafter connected with a public sewer a reasonable part of the cost of construction thereof; provided that *no owner of the estate has paid for such sewer or has paid any assessment for its construction.* Every [such] assessment . . . shall . . . constitute a lien upon the estate assessed. Such lien shall continue . . . under the same conditions as a lien established under chapter eighty of the General Laws . . . . *The provisions of . . . chapter eighty . . . relative to* the apportionment, division, reassessment, *abatement* and collection of assessments, and to interest, shall apply to assessments made under this section" (emphasis supplied). The commission has succeeded to the powers of the board of street commissioners. See St. 1953, c. 473, and Boston Ord. (1954) c. 2, §§ 1, 57.

[2] Section 7, as appearing in the 1945 act, reads, "The board of street commissioners . . . *at any time within six months after any new sewer or drain . . . is completed,* shall assess upon the several estates especially benefited . . . a proportional part of the cost . . . not exceeding in amount . . . four dollars per linear foot; *but no such assessment shall exceed the amount of the special benefit received.* Every assessment made under this section shall constitute a lien upon the estate assessed . . . . Such lien shall continue . . . as a lien established under chapter eighty of the General Laws . . . . The provisions of said chapter eighty . . . relative to the apportionment, division, reassessment, abatement and collection of assessments, and to interest, shall apply to assessments made under this section" (emphasis supplied).

[3] Section 7, as amended by St. 1912, c. 371, § 1, read, "The board of street commissioners of said city *at any time within two years after any new sewer . . . is completed,* shall assess upon the several estates especially benefited . . . a proportional part of the cost thereof, not exceeding . . . four dollars per linear foot. . . . Every such . . . assessment shall be a lien upon the estate assessed . . . for two years . . . . Said board may assess upon any estate . . . connected with a public sewer a reasonable part of the cost of construction thereof: *provided,* that no owner of the estate has paid for such sewer or has paid any assessment for its construction. Every such assessment may be revised . . . by said board . . . and . . . shall be subject to an appeal to the superior court . . ." (emphasis supplied).

down the period within which an original assessment could be made from two years (see footnote 3, *supra*) to six months. Although the Legislature's attention was thus drawn specifically to the matter of limitations upon the period of assessments, no such limitation was inserted in § 7A with respect to assessments thereafter made upon later connections with sewers. The matter in this respect was left without limit of time as it had been under the old § 7.

The bill (1945 House Bill No. 1190) was enacted in substantially (see 1945 House Journal, p. 821) the form of bill annexed to a petition of the chairman of the board of street commissioners of Boston, obviously a person familiar with the problems of sewer assessments. The omission from § 7A of any time limitation upon making assessments upon later connections was appropriate. Connections to sewers might be made, as here, long after the expiration of a period of six months from the date of completion of a sewer. The Legislature reasonably could have felt that no time limitation, based upon the completion of the sewer, should be imposed upon assessments under § 7A, which were to be made only after sewer connections.

We need not now decide whether an assessment under § 7A could be barred on some principle analogous to laches, if not made within a reasonable time (see *Commissioner of Corps. & Taxn.* v. *Malden,* 321 Mass. 46, 51–52) after the connection of a particular parcel of land with a sewer. The longest period between the sewer connection and the assessment in the present case was from September 11, 1957, to April 13, 1960, a period of about two years and seven months. This lapse of time in the circumstances is not unreasonable.[4]

---

[4] As to public considerations, which may make it desirable that an assessment creating a lien on land be made within a reasonable time of the event which permits the assessment to be made at all, see *Hitchcock* v. *Aldermen of Springfield,* 121 Mass. 382, 384–385. Compare *Fairbanks* v. *Mayor & Aldermen of Fitchburg,* 132 Mass. 42, 47–48, *County Commrs. of Hampshire, petitioners,* 143 Mass. 424, 432–433, and *Hester* v. *Collector of Taxes of Brockton,* 217 Mass. 422, 424, with *Dunn* v. *Mayor of Taunton,* 200 Mass. 252, 258–259, and *Union St. Ry.* v. *Mayor of New Bedford,* 253 Mass. 314, 317–318.

2.   We hold that § 7A does not permit a sewer better-
ment assessment in excess of the special benefit conferred
upon the assessed property.   There is in § 7A no express
limitation of such an assessment to "the amount of the
special benefit received" (cf. language of § 7) but § 7A
does provide that the assessment shall be only of "a reason-
able part of the cost of construction."   In the light of the
authorities referred to below, it is plain that an assessment
in excess of the benefit conferred would not be "reason-
able" and, accordingly, we interpret § 7A in a manner
which avoids doubts about its constitutionality.   See *Fer-
guson* v. *Commissioner of Corps. & Taxn.* 316 Mass. 318,
323–324; *New England Tel. & Tel. Co.* v. *National Merch.
Corp.* 335 Mass. 658, 664; *Worcester County Natl. Bank* v.
*Commissioner of Banks,* 340 Mass. 695, 701.

In the earlier *O'Malley* case, 340 Mass. 542, 549, it was
said that "nothing in" § 7 or § 7A "constitutes statutory
authority . . . to require either a permit or a fee, as op-
posed to a betterment assessment, for a permit to connect
with an existing sewer."   Section 7A was there regarded
as authorizing an assessment on betterment principles, and
thus necessarily subject to the constitutional limitations
upon "an assessment to be made under the general taxing
power . . . and not the police power."   The 1945 insertion
of § 7A was adopted long after the decisions in *Sears* v.
*Street Commrs. of Boston,* 173 Mass. 350, 352, *White* v.
*Gove,* 183 Mass. 333, 335, and *Crofts* v. *Assessors of No.
Adams,* 261 Mass. 191, 201–202, in all of which it was stated
that special assessments for the cost of public improve-
ments are unconstitutional if in substantial excess of the
benefits received.   We view § 7A as a statute adopted in
the light of, and intended to comply with, this controlling
constitutional principle as theretofore stated by this court.
See *Mathewson* v. *Contributory Retirement Appeal Bd.* 335
Mass. 610, 614–615.

Our interpretation of § 7A is further supported by the
last sentence of § 7A which makes applicable to § 7A as-
sessments certain provisions of G. L. c. 80, including § 5

(as amended through St. 1933, c. 157, § 2). Section 5 in turn refers to the standards of assessment under c. 80, § 1. Section 1 (as amended through St. 1933, c. 254, § 62) requires (a) that the assessment be "a proportionate share of the cost of . . . [the] improvement" fixed after a determination of "the value of such benefit . . . to the land within . . . [the affected] area," and (b) that it "shall [not] exceed the amount of such adjudged benefit." Our view of § 7A is consistent with the interpretation of somewhat similar statutes in earlier decisions of this court. See *Carson* v. *Sewerage Commrs. of Brockton*, 175 Mass. 242, 244, affd. 182 U. S. 398; *Stark* v. *Boston*, 180 Mass. 293, 295; *Cheney* v. *Beverly*, 188 Mass. 81, 84–85; *Corcoran* v. *Aldermen of Cambridge*, 199 Mass. 5, 12–14; Nichols, Taxation in Massachusetts (3d ed.) 758–762.

3. The city is not an "owner of" an "estate [who] has paid for such sewer or has paid any assessment for its construction" within the meaning of those words in § 7A. See footnote 1, *supra*, first italicized passage. To be sure, the city had an ownership interest in the parcels, either as holder of a tax title or by tax title foreclosure, in 1941 or 1942 (see 340 Mass. 542, 544) when it paid for the sewers. The city's title was acquired as an incident of its tax collecting function (see 340 Mass. 542, 545–546) rather than as a purchase for usual municipal purposes. Its payment for the sewers was not because of any betterment assessment upon it as the owner of land receiving a benefit, but from funds appropriated for a public improvement by the city as a municipality. The language quoted above from § 7A was plainly intended to prevent a second assessment under § 7A to any person who was (or claimed by, through, and under) an owner who had theretofore paid a betterment assessment based upon the benefit to his land from the same improvement. The language has no application here.

O'Malley argues that the city upon the sale following the tax title foreclosure (see St. 1943, c. 434, § 4; cf. G. L. c. 60, § 77, as amended through St. 1938, c. 339, § 3, later amended

by St. 1953, c. 654, § 37) was required to obtain "the fair value of the property" by sale at public auction and that, accordingly, the price received by the city must have reflected the benefit of the presence of the sewer.   The record does not establish that this was the fact.   When the sale after the tax title foreclosure took place, the parcels remained subject to the possibility (now embodied in § 7A as we interpret it) of a later betterment assessment for the sewer improvement when the parcels were connected in fact with the sewer, for no earlier betterment assessment had been paid.   It has not been shown that the price received by the city was not depressed by the possibility of such a later assessment rather than increased by the existence of the sewer.

4.   The judgment dismissing the petition is affirmed.

*So ordered.*